OPINION
{¶ 1} By indictment filed on September 3, 2004, appellant, Marvin F. Moss, Jr., was charged with a single count of felonious assault in violation of R.C. 2903.11. Moss was accused of knowingly causing or attempting to cause physical harm to Zachary Summers by means of a deadly weapon, a knife.
 {¶ 2} The indictment also included a separate count of felonious assault against co-defendant, Jeannette Chaffins, aka Reynolds. The indictment charged Chaffins with felonious assault against David Besmertnuk by means of a deadly weapon, a motor vehicle. Both offenses were alleged to have taken place on August 27, 2004. Appellant's case was tried separately from that of Jeannette Chaffins. Following a jury trial, appellant was found guilty. Sentence was imposed and this appeal followed.
 {¶ 3} On August 27, 2004, at approximately 8:00 or 9:00 p.m., David Besmertnuk, the victim in count one, was walking from his home to a nearby store to buy a soft drink for his daughter. Besmertnuk observed a man and woman arguing near an apartment building. The man and woman were later identified as appellant and co-defendant Chaffins.
 {¶ 4} Besmertnuk continued on his errand and after making his purchase, began walking back through a field to his home. By this time, appellant was standing near a fence at the edge of the field. Besmertnuk realized appellant was the same man he had seen arguing with the woman earlier.
 {¶ 5} As Besmertnuk walked across the field, a woman, identified as co-defendant Chaffins, drove a dark blue Chevrolet Corsica automobile at high speed from an adjacent parking lot into the field and straight at him. Besmertnuk jumped out of the way as the car sped past. The car braked, spun around and came back toward Besmertnuk a second time. Besmertnuk ran behind a tree for safety. He peered out and saw that the driver of the car was the same woman that had been arguing with the man earlier.
 {¶ 6} At the same time, Zachary Summers, the victim in count two, was sitting in his car with Christopher Lute. Both men saw Chaffins attempt to run over Besmertnuk with her car. Summers shouted at Chaffins, who got out of her car and confronted Summers and Lute. Chaffins began to assault Summers who ran to his apartment. Summers came out of his apartment with a pipe. He held the pipe behind his leg or back and peered around a corner to see what was taking place. As Summers was looking around the corner of the building, appellant came up from behind and grabbed him and told him to drop the pipe. Appellant put a knife to Summers' throat and asked several times: "Are you ready to die?"
 {¶ 7} Appellant then held Summers while Chaffins approached and began to punch him. When Chaffins picked up the pipe and raised it to strike Summers in the head, Summers was able to break free. He ran to a nearby filling station. Witnesses at the filling station testified that Summers appeared shaken and frightened and blood was seeping from his throat. He asked them to call the police. Summer's throat had been cut by appellant's knife and required seven stitches to close.
 {¶ 8} Meanwhile, still armed with the knife he used to cut Summers, appellant turned to Lute and asked if Lute wanted any trouble. Lute memorized the license plate on Chaffin's car and ran to a pay telephone to summon police. Chaffins left the scene in her car before police arrived. Later, the car returned and was parked at one of the apartments. Both Lute and Besmertnuk identified the vehicle. They also identified Chaffins and appellant as the assailants. The pipe was found in Chaffin's car.
 {¶ 9} The defense offered no testimony. At appellant's request, the trial court instructed the jury on the affirmative defense of defense of another. The jury deliberated, and found appellant guilty of felonious assault. He was sentenced and this appeal followed.
 {¶ 10} Appellant raises a single assignment of error:
The jury's verdict was against the manifest weight of the evidence, as Appellant established that he acted in defense of another by a preponderance of the evidence.
 {¶ 11} On the trial of a case, whether criminal or civil, the weight to be given to the evidence and the credibility of the witnesses are primarily for the trier of the facts. State v.DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus;State v. Conway, 108 Ohio St.3d 214, 220, 2006-Ohio-791. When determining whether a jury verdict is against the weight of the evidence, a reviewing court sits as a "thirteenth juror." An appellate court must review the entire record, weigh the evidence and all reasonable inferences to be drawn therefrom, consider the credibility of the witnesses and determine whether the trier of fact clearly lost its way, resulting in a manifest miscarriage of justice. State v. Thompkins (1997), 78 Ohio St.3d 380. If there is conflicting evidence to consider, the question on review is whether in resolving those conflicts, the jury clearly lost its way. State v. Hancock, 108 Ohio St.3d 57, 2006-Ohio-160, ¶ 39, citing State v. Martin (1983), 20 Ohio App.3d 172, 175.
 {¶ 12} Appellant does not contest the weight or sufficiency of the evidence presented in support of the state's case-in-chief. It appears to be undisputed that appellant knowingly used a deadly weapon, a knife, and did inflict physical harm upon victim Summers. Appellant does contest the verdict, however, and argues that he should have been found not guilty because evidence shows that he acted lawfully in the defense of another person.
 {¶ 13} Defense of another is a variation of self-defense. Under certain circumstances, one may employ appropriate force to defend another individual against an assault. However, "one who intervenes to help a stranger stands in the shoes of the person whom he is aiding, and if the person aided is the one at fault, then the intervenor is not justified in his use of force and is guilty of an assault." State v. Wenger (1979),58 Ohio St.2d 336, 340. Therefore, one who claims the lawful right to act in defense of another must meet the criteria for the affirmative defense of self-defense.
 {¶ 14} Where deadly force is involved, to successfully present a claim of self-defense, the accused must prove by a preponderance of the evidence that he was not at fault in creating the situation that gave rise to the affray; that he had a bona fide belief that he was in imminent danger of death or great bodily harm and his only means of escape was in the use of that force and finally, that the accused had not violated any duty to retreat and avoid the danger. State v. Robbins (1979),58 Ohio St.2d 74, paragraph two of the syllabus. Defense of another requires proof of the same elements.
 {¶ 15} Because appellant stood in the shoes of Chaffins, appellant could act with no more force than Chaffins would have been justified in using to defend herself against an assault. To successfully defend on the grounds that he is excused from liability for his assault against Summers, appellant was required to convince the jury that he was lawfully defending Chaffins; that he was acting in good faith and upon reasonable grounds to believe that Chaffins was in imminent danger of death or great bodily harm; that he used a reasonable degree of force to defend Chaffins; and that he used no more force than he would have been entitled to use had he been the person attacked.
 {¶ 16} An accused need not present evidence to be entitled to a jury instruction on self-defense or defense of another. Appellant offered no testimony or other evidence. Therefore, we must review the entire record to determine if there is evidence to support appellant's argument that he acted in defense of another.
 {¶ 17} Accepting for purposes of discussion that there is some evidence that supports giving an instruction to the jury on appellant's theory of defense, we cannot say that the evidence preponderates. It was the province of the jury to consider, weigh and either accept or reject appellant's argument that his only means of protecting Chaffins was to use a knife to cut the victim's throat. The testimony in this case indicates that Summers was a significant distance from Chaffins, peering around a corner when appellant assaulted him with the knife. There is no evidence that the victim made any threatening gestures or called out threats or did anything that would justify appellant's use of a knife to wound the victim. It cannot be said that a rational jury had to accept appellant's theory of defense.
 {¶ 18} Having fully reviewed the record in this case, the facts in evidence and all reasonable inferences to be drawn therefrom, we find that the verdict is not against the manifest weight of the evidence. The single assignment of error is overruled and the judgment of the trial court is affirmed.
Judgment affirmed.
Sadler and French, JJ., concur.