OPINION
{¶ 1} Defendant, Anthony Wilson, appeals from his conviction and sentence for complicity to commit felonious assault.
 {¶ 2} In the early morning hours of May 29, 2007, Eugene
Talbott and several of his friends were sitting on the steps *Page 2 
of the apartment building at 62 Central Avenue in Dayton. They saw a female, Timmesha Manson, exit an apartment building located across the street at 39 Central Avenue. Manson was stumbling and vomiting, and appeared to be sick or drunk.
 {¶ 3} A short time later, Defendant, who is Manson's boyfriend, exited that same building and stood on the steps, watching Manson. When one of Talbott's friends, Strobridge Giles, asked Manson if she was alright, Manson said she was fine. When Giles asked if she was sure of that, Manson began cussing at Giles. Eugene Talbott approached Manson and asked if she was alright. Manson cussed at Talbott, and they argued.
 {¶ 4} When Manson began to walk away, Talbott decided to follow Manson, walking several feet behind her, admittedly to make her angry. Manson picked up a brick and turned toward Talbott, and Talbott shouted to Defendant to come and get his woman. Manson then threw the brick at Talbott, but missed. At that point another one of Talbott's friends, Brandy McBeath, came over and shoved Manson. Defendant caught Manson, preventing her from falling. Defendant then handed Manson a .9mm semi-automatic handgun, whereupon Manson immediately fired several shots, striking Talbott in the right thigh. *Page 3 
 {¶ 5} Defendant took the gun back from Manson and they ran to 50 Central Avenue, from where Defendant fired several more shots in the direction of the place where Talbott and his friends had been sitting. Defendant used the gun to break the glass out of the doors, and he and Manson entered the building. Defendant suffered cuts to his hands and arms and left a blood trail. Police responding to the shooting scene followed the trail to Defendant's mother's apartment, where Defendant and Manson were found and arrested and the .9mm handgun used in the shooting was recovered.
 {¶ 6} Defendant was indicted on two counts of complicity to commit felonious assault: one count involving causing serious physical harm, R.C. 2923.03(A)(2), 2903.11(A)(1), and the other count involving causing physical harm by means of a deadly weapon, R.C. 2923.03(A)(2),2903.11(A)(2). A three year firearm specification, R.C. 2941.145, was attached to each charge. Following a jury trial Defendant was found guilty of all charges and specifications. The trial court merged the felonious assault counts and sentenced Defendant to one four year prison term, to be served consecutively to the three year term imposed on the merged firearm specifications, for a total aggregate sentence of seven years.
 {¶ 7} Defendant timely appealed to this court from his *Page 4 
conviction and sentence. We shall consider the assigned errors in the order that best facilitates our review.
SECOND ASSIGNMENT OF ERROR
 {¶ 8} "APPELLANT'S CONVICTION FOR COMPLICITY TO FELONIOUS ASSAULT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND THE EVIDENCE WAS INSUFFICIENT TO SUPPORT APPELLANT'S CONVICTION FOR FELONIOUS ASSAULT."
 {¶ 9} Defendant argues that his conviction for complicity to commit felonious assault is not supported by legally sufficient evidence and is against the manifest weight of the evidence because the evidence fails to demonstrate that he and Manson planned or discussed this shooting, that Defendant knew Manson would shoot Talbott, or that Defendant shared Manson's criminal intent.
 {¶ 10} A sufficiency of the evidence argument disputes whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law. State v. Thompkins, (1997), 78 Ohio St.3d 380. The proper test to apply is the one set forth in paragraph two of the Syllabus of State v. Jenks (1991), 61 Ohio St.3d 259:
 {¶ 11} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction *Page 5 
is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."
 {¶ 12} A weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive. State v. Hufnagle (Sept. 6, 1996), Montgomery App. No. 15563. The proper test to apply to that inquiry is the one set forth in State v. Martin (1983),20 Ohio App.3d 172, 175:
 {¶ 13} "[T]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Accord: State v. Thompkins, supra.
 {¶ 14} In order to find that a manifest miscarriage of justice occurred, an appellate court must conclude that a *Page 6 
guilty verdict is "against," that is, contrary to, the manifest weight of the evidence presented. See, State v. McDaniel (May 1, 1998), Montgomery App. No. 16221. The fact that the evidence is subject to different interpretations on the matter of guilt or innocence does not rise to that level.
 {¶ 15} The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts primarily to resolve. State v. DeHass (1967), 10 Ohio St.2d 230. In State v. Lawson (August 22, 1997), Montgomery App. No. 16288, we explained:
 {¶ 16} "[B]ecause the factfinder . . . has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness."
 {¶ 17} This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of facts lost its way in arriving at its verdict. State v. Bradley (Oct. *Page 7 
24, 1997), Champaign App. No. 97-CA-03.
 {¶ 18} R.C. 2903.11 defines the crime of Felonious Assault, and provides:
 {¶ 19} "(A) No person shall knowingly do either of the following:
 {¶ 20} "(1) Cause serious physical harm to another or to another's unborn;
 {¶ 21} "(2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance."
 {¶ 22} R.C. 2923.03(A)(2) defines Complicity, and provides:
 {¶ 23} "No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:
 {¶ 24} "* * *
 {¶ 25} "Aid or abet another in committing the offense."
 {¶ 26} Defendant was found guilty of knowingly aiding and abetting Manson causing serious physical harm to Talbott, and of causing physical harm to Talbott by means of a deadly weapon. R.C. 2923.03(A)(2),2903.11(A)(1) and (2). In State v. Johnson, 93 Ohio St.3d 240,2001-Ohio-1336, the Ohio Supreme Court stated:
 {¶ 27} "To support a conviction for complicity by aiding *Page 8 
and abetting pursuant to R.C.2923.03(A)(2), the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal. Such intent may be inferred from the circumstances surrounding the crime." Syllabus.
 {¶ 28} The victim, Talbott, and two eyewitnesses, McBeath and Giles, testified regarding the attempts that were made to determine if Manson was physically alright and how those efforts were met with hostility and profane language. After Manson threw a brick at Talbott, McBeath attempted to push Manson to the ground, but Defendant caught Manson and broke her fall. At that point Defendant handed Manson a silver .9mm Ruger semi-automatic handgun that Manson used to shoot Talbott. McBeath could see that what Defendant handed Manson was wrapped in a white cloth that Defendant carried. After Manson shot Talbott, Defendant took the gun back and fired several more shots in the direction where Talbott and his friends had been sitting in front of 62 Central Avenue. Defendant then used the gun to break the glass doors at 50 Central Avenue, and he and Manson entered that building.
 {¶ 29} The testimony of Talbott, McBeath, and Giles was corroborated by the physical evidence in this case. An *Page 9 
evidence technician testified that a total of twelve spent shell casings were recovered in front of 39 Central Avenue and 50 Central Avenue. A ballistics expert from the crime lab confirmed that all twelve shell casings were fired from the .9mm Ruger found in Defendant's mother's apartment. Also, video surveillance footage from 50 Central Avenue shows Defendant and Manson on the steps, that Defendant turned and fired several shots, and then used the gun to break the glass doors and enter the building. Police located Defendant and Manson and the gun used in the shooting in that building, in Defendant's mother's apartment.
 {¶ 30} Finally, Jason Morris, a security guard with Moonlight Security, the company hired to patrol Dayton Metropolitan Housing Authority buildings including 39 Central Avenue and 50 Central Avenue, testified regarding the video surveillance taken at those two locations. On the video surveillance taken at 39 Central Avenue, Manson is seen leaving the building with nothing in her hands. A short time later, Defendant is seen exiting the building and remaining on the front steps. Defendant is shown going back into the building and coming out again, with his hand and arm wrapped in a white cloth held tightly against his body. Defendant then walks off the steps and out of camera range. *Page 10 
 {¶ 31} The jury could reasonably infer from the totality of this evidence that Defendant knowingly aided and abetted Manson in shooting Talbott, and that he shared Manson's criminal intent. Viewing the totality of the evidence in a light most favorable to the State, as we must, a rational trier of facts could find all of the essential elements of complicity to commit felonious assault proved beyond a reasonable doubt. Defendant's conviction is supported by legally sufficient evidence.
 {¶ 32} Reviewing the record as a whole, we cannot say that the evidence weighs heavily against a conviction, that the jury lost its way in choosing to believe the State's witnesses, or that a manifest miscarriage of justice occurred. Defendant's conviction for complicity to commit felonious assault is not against the manifest weight of the evidence.
 {¶ 33} Defendant's second assignment of error is overruled.
FIRST ASSIGNMENT OF ERROR
 {¶ 34} "THE TRIAL COURT ERRED IN REFUSING TO INSTRUCT ON THE AFFIRMATIVE DEFENSE OF DEFENSE OF ANOTHER; THE LESSER INCLUDED OFFENSE OF ASSAULT; AND THE INFERIOR DEGREE OFFENSE OF AGGRAVATED ASSAULT."
 {¶ 35} Whether to give a requested jury instruction is a matter left to the sound discretion of the trial court, and *Page 11 
its decision will not be disturbed on appeal absent an abuse of discretion. State v. Davis, Montgomery App. No. 21904, 2007-Ohio-6680, at ¶ 14. An abuse of discretion means more than just a mere error of law or an error in judgment. It implies an arbitrary, unreasonable, unconscionable attitude on the part of the court. State v. Adams (1980),62 Ohio St.2d 151.
Defense of Another
 {¶ 36} In Davis, at ¶ 14, this court observed:
 {¶ 37} "Self-defense is an affirmative defense. State v. Williford (1990), 49 Ohio St.3d 247, 249. The burden of proving self-defense by a preponderance of the evidence is upon the accused. R.C. 2901.05(A); State v. Jackson (1986), 22 Ohio St.3d 281. In order to establish self-defense, a defendant must prove: (1) that the defendant was not at fault in creating the situation giving rise to the affray; (2) that the defendant had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force; and (3) that the defendant did not violate any duty to retreat or avoid the danger. State v. Robbins (1979), 58 Ohio St.2d 74."
 {¶ 38} The affirmative defense of defense of another is a variation of self-defense. State v. Moss, Franklin App. *Page 12 
No. 05AP-610, 2006-Ohio-1647. Under certain circumstances, a person may be justified in using force to defend another person against an assault. However, the actor then stands in the shoes of the person he aids, and if the person aided is the one at fault in creating the affray, the actor is not justified in his use of force. Id. One who acts in defense of another must meet the criteria for self-defense. Id.
 {¶ 39} The proper standard in a criminal case for determining whether a defendant has successfully raised an affirmative defense is to inquire whether the defendant has introduced sufficient evidence which, if believed, would raise a question in the minds of reasonable men concerning the existence of the issue. State v. Melchior (1978),50 Ohio St.2d 15.
 {¶ 40} While they had been verbally bickering back and forth, it was Manson's conduct in throwing a brick at Talbott that escalated their verbal argument into a physical altercation that led to the shooting. McBeath's act of shoving or pushing Manson was a reaction to and retaliation for Manson's attempt to physically assault Talbott with a brick. The trial court correctly concluded that Manson was at fault in creating this situation. Because Manson cannot claim self-defense, Defendant cannot claim that he acted in defense *Page 13 
of Manson.
 {¶ 41} Furthermore, the evidence does not support a claim that Manson had a bona fide belief that she was in imminent danger of death or great bodily harm and that her only means of escape from such danger was in the use of deadly force. There is no evidence in this record that Talbott or any of his friends ever threatened to harm Manson or displayed any weapon. Talbott's harassment of Manson and his attempts to anger her by following thirty or forty feet behind her, as well as their verbal bickering back and forth, would not justify Manson's use of deadly force. Mere words alone are not sufficient to incite the use of deadly force. State v. Shane (1992), 63 Ohio St.3d 630.
 {¶ 42} As for McBeath's conduct in trying to push Manson down to the ground, that limited form of physical assault would likewise not justify the use of deadly force to escape from whatever danger it created, as such a response clearly would be excessive. In any event, McBeath's conduct in pushing Manson was in retaliation for Manson initiating a physical assault upon Talbott by trying to hit him with a brick.
 {¶ 43} Finally, the evidence demonstrates that Manson had a clear, unobstructed path to her apartment building at 39 *Page 14 
Central Avenue, where her boyfriend, Defendant, was standing outside on the steps. Nothing prevented her from simply walking away from Talbott. Defendant had a duty to retreat and avoid the danger, and she violated that duty.
 {¶ 44} Because the evidence in this record does not support any of the elements of self-defense, under no reasonable view could a trier of facts find by a preponderance of the evidence, R.C. 2901.05(A), that Manson acted in self-defense or that Defendant acted in defense of Manson. The trial court did not abuse its discretion in refusing Defendant's request to instruct on defense of another.
Assault
 {¶ 45} Defendant was indicted on two counts of complicity to commit felonious assault, one count involving causing serious physical harm, R.C. 2923.03(A)(2), 2903.11(A)(1), and the other count involving causing physical harm by means of a deadly weapon, R.C. 2923.03(A)(2),2903.11(A)(2).
 {¶ 46} R.C. 2903.11(A)(1) and (2) require proof that the offender acted knowingly. Defendant argues that the trial court abused its discretion in refusing his request to instruct the jury on the lesser included offense of assault, R.C. 2903.13(B), which requires proof that an accused acted recklessly, because a reasonable juror could have concluded *Page 15 
that Defendant's conduct in handing the gun to Manson, aiding and abetting Manson in causing serious physical harm to Talbott, was done recklessly instead of knowingly.
 {¶ 47} Jury instructions on lesser included offenses must be given when the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction on the lesser included offense. State v. Shane (1992), 63 Ohio St.3d 630; State v. Fuller, Montgomery App. No. 20658, 2005-Ohio-3696. In other words, the trial court must instruct the jury on the lesser included offense if under any reasonable view of the evidence it would be possible for the jury to find defendant not guilty of the greater offense and guilty of the lesser offense. Fuller. The trial court's decision regarding whether to give a jury instruction on a lesser included offense will not be disturbed on appeal absent an abuse of the court's discretion. Id.
 {¶ 48} This court has previously held that while assault under R.C. 2903.13(B) is a lesser included offense of felonious assault under R.C. 2903.11(A)(1), it is not a lesser included offense of felonious assault charged under R.C. 2903.11(A)(2), because a person can knowingly attempt to cause physical harm with a deadly weapon without also recklessly causing serious physical harm. State v. Colston (Dec. 17, *Page 16 
1993), Montgomery App. No. 13599. Therefore, Defendant was not entitled to an instruction on assault, R.C. 2903.13(B), as a lesser included offense of felonious assault charged under R.C. 2903.11(A)(2).
 {¶ 49} With respect to felonious assault charged under R.C. 2903.11(A)(1), a person is guilty of that offense when he knowingly causes serious physical harm to another. A person is guilty of assault under R.C. 2903.13(B) when he recklessly causes serious physical harm to another. R.C. 2901.22 defines the culpable mental states of "knowingly" and "recklessly" as follows:
 {¶ 50} "(B) A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist.
 {¶ 51} "(C) A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist." *Page 17 
 {¶ 52} The uncontroverted evidence demonstrates that Defendant knowingly handed the gun to Manson during an argument that Manson had, by her conduct in throwing a brick at Talbott, escalated from mere verbal bickering into a physical altercation. Defendant's theory of defense was not that he did not hand the gun to Manson, but that he did not do so knowing that Manson would use that gun to shoot Talbott, and therefore he did not share Manson's criminal intent.
 {¶ 53} The jury could reasonably infer from the evidence that when Defendant handed the gun to Manson he was aware that she probably would use it to shoot Talbott. Under no reasonable view of the evidence could the jury find that Defendant did not act knowingly, but rather was merely reckless in aiding and abetting Manson in causing serious physical harm to Talbott. Accordingly, the evidence did not warrant an instruction on assault under R.C. 2903.13(B), and the trial court did not abuse its discretion in refusing to give that instruction.
Aggravated Assault
 {¶ 54} Defendant argues that the trial court abused its discretion in refusing to give his requested jury instruction on the inferior degree offense of aggravated assault, R.C. 2903.12, because McBeath's conduct in pushing Manson *Page 18 
constituted serious provocation that was reasonably sufficient to arouse the passion of an ordinary person beyond the power of his or her control, and incite Defendant into using deadly force.
 {¶ 55} R.C. 2903.12, which defines aggravated assault provides:
 {¶ 56} "(A) No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly:
 {¶ 57} "(1) Cause serious physical harm to another or to another's unborn;
 {¶ 58} "(2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance, as defined in section 2923.11 of the Revised Code."
 {¶ 59} The elements of felonious assault, R.C. 2903.11, and the inferior degree offense of aggravated assault, R.C. 2903.12, are identical except for the mitigating element of serious provocation in aggravated assault. State v. Goldman, Clark App. No. 2006CA103,2007-Ohio-6682. In State v. Thornton, Montgomery App. No. 20652,2005-Ohio-3744, this *Page 19 
court observed:
 {¶ 60} "{¶ 50} Finally, Thornton argues that the trial court should have granted his requested instruction on aggravated assault. Aggravated assault is an offense of inferior degree of felonious assault. If a defendant, who is charged with felonious assault, presents sufficient evidence of serious provocation, the trial court must instruct the jury on aggravated assault. State v. Wong (1994), 95 Ohio App.3d 39,641 N.E.2d 1137. In analyzing whether an aggravated assault instruction is appropriate, the trial court must first determine whether based on an objective standard the alleged provocation was reasonably sufficient to bring on a sudden fit of rage. State v. Shane (1992), 63 Ohio St.3d 630,634, 590 N.E.2d 272. An aggravated assault instruction is only appropriate when the victim has caused serious provocation. Id. Serious provocation is provocation that is `sufficient to arouse the passion of an ordinary person beyond the power of his or her control.' Id. at 635,590 N.E.2d 272. Additionally, serious provocation has been described as provocation that is `reasonably sufficient to bring on extreme stress and * * * to incite or to arouse the defendant into using deadly force.' State v. Deem (1988), 40 Ohio St.3d 205, 533 N.E.2d 294. Classic examples of serious provocation are *Page 20 
assault and battery, mutual combat, illegal arrest and discovering a spouse in the act of adultery. Shane, supra at 635, 590 N.E.2d 272.
 {¶ 61} "{¶ 51} If the objective standard is met, then the court must continue on to determine under a subjective standard whether this defendant was actually, `under the influence of sudden passion or in a sudden fit of rage.' Shane, supra at 634, 590 N.E.2d 272. The emotional and mental state of the defendant and the conditions and circumstances that surround him at the time are only considered during this subjective stage of the analysis. Id."
 {¶ 62} The evidence fails to demonstrate that Manson acted out of any serious provocation. Neither Talbott nor any of his friends ever attempted or even threatened to physically harm Manson. Her claims that Talbott and his friends intimidated her and put her in fear do not constitute sufficient serious provocation, because mere verbal exchanges and fear are insufficient to demonstrate the kind of emotional state necessary to constitute sudden passion or a sudden fit of rage. State v. Mack, 82 Ohio St.3d 198.
 {¶ 63} Defendant argues that McBeath's conduct in shoving or pushing Manson, which would have resulted in Manson falling to the ground had Defendant not caught her, constitutes an *Page 21 
assault that is a classic example of serious provocation reasonably sufficient to induce a fit of rage and incite Defendant into using deadly force. We disagree. McBeath's conduct was a response to Manson's attempt to physically assault Talbott by hitting him with a brick. Furthermore, we do not find that the act of pushing or shoving Manson constitutes serious provocation reasonably sufficient to incite Defendant into using deadly force. Such a response is excessive and out of all proportion to the relatively slight amount of provocation present. Because the evidence fails to demonstrate the existence of serious provocation, an instruction on aggravated assault was not warranted by the evidence, and the trial court did not abuse its discretion in refusing to give that instruction.
 {¶ 64} Defendant's first assignment of error is overruled.
THIRD ASSIGNMENT OF ERROR
 {¶ 65} "THE TRIAL COURT ERRED IN REFUSING TO PERMIT DEFENSE COUNSEL TO IMPEACH A WITNESS, EUGENE TALBOTT, BY PRIOR CONVICTION."
 {¶ 66} Defendant attempted to impeach Talbott on cross-examination with evidence of a prior conviction on a federal charge. Talbott admitted that he had a conviction, but the State objected and the trial court refused to allow the *Page 22 
impeachment because Defendant's counsel did not have a certified copy of the conviction and therefore lacked a good faith basis to believe that the conviction was admissible at trial. Defense counsel pointed out that during the preliminary hearing he had asked Talbott "if he had ever been convicted for violating a federal statute," and Talbott said "yes." However, because defense counsel did not ask Talbott at that preliminary hearing what his conviction was for, the trial court refused to allow Defendant to proceed with that impeachment evidence at trial.
 {¶ 67} The decision whether to admit or exclude evidence lies within the sound discretion of the trial court and its decision in such matters will not be disturbed on appeal absent an abuse of the trial court's discretion. State v. Sage (1987), 31 Ohio St.3d 173.
 {¶ 68} Evidence that a witness has been convicted of a crime is admissible for the purpose of attacking his or her credibility if the crime was punishable by death or imprisonment in excess of one year, or involved dishonesty or false statement. Evid. R. 609(A)(1), (3). Evidence of a conviction is not admissible if more than ten years have passed since the date of the conviction. Evid. R. 609(B). Evid. R. 609(F), which governs the method of proving the *Page 23 
conviction, provides "when evidence of a witness's conviction of a crime is admissible under this rule, the fact of the conviction may be proved only by the testimony of the witness on direct or cross-examination, or by public record shown to the witness during his or her examination."
 {¶ 69} Defendant argues that, pursuant to Evid. R. 609(F), he was entitled to inquire on cross-examination about Talbott's prior conviction, and that he was not required to have a certified copy of Talbott's prior conviction in order to impeach Talbott because he was entitled to prove the existence of any prior conviction by Talbott's testimony on cross-examination. Relying upon the opening phrase in Evid. R. 609(F), which says "when evidence of a witness's conviction of a crime is admissible under this rule, . . ." the State responds that while the fact of a conviction may be proved by the testimony of a witness on direct or cross-examination, the conviction must first be admissible under Evid. R. 609, and because Defendant had no knowledge of the nature or date of Talbott's prior conviction, he had no good faith basis to believe that the conviction was admissible under the limitations in the rule.
 {¶ 70} Because Defendant's counsel had asked Talbott during the preliminary hearing whether he had ever been convicted of *Page 24 
violating a federal statute, and having received an affirmative response, we cannot say that counsel lacked a good faith basis to believe that Talbott was subject to impeachment via his prior conviction. Nevertheless, defense counsel's question was overly broad in that it was not limited to conviction for a felony rather than a misdemeanor, or that the conviction was within the past ten years. Absent those facts, there is no basis in this record to find that Talbott's prior conviction satisfied the conditions for admissibility of a prior conviction for impeachment in Evid. R. 609(A)(1), (3), and (B). Therefore, we cannot find that the trial court abused its discretion in refusing to allow Defendant to pursue impeachment of Talbott with that evidence.
 {¶ 71} Defendant's third assignment of error is overruled. The judgment of the trial court will be affirmed.
DONOVAN, P.J. And WOLFF, J., concur.
Kelly D. Cramer, Esq., James S. Armstrong, Esq., Hon. Mary Katherine Huffman. *Page 1