[Cite as *State v. Schooler*, 2011-Ohio-6108.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

STATE OF OHIO                              :

    Plaintiff-Appellee                  :          C.A. CASE NO.    24488

v.                                        :          T.C. NO.    10CR2935/2

JAMES A. SCHOOLER                          :          (Criminal appeal from
                                           Common Pleas Court)

    Defendant-Appellant              :


                                          :

. . . . . . . . . .

**O P I N I O N**

Rendered on the _____23rd_____ day of _____November_____, 2011.

. . . . . . . . . .

LAURA M. WOODRUFF, Atty. Reg. No. 0084161, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
    Attorney for Plaintiff-Appellee

SCOTT BISSELL, Atty. Reg. No. 0085229, 3080 Ackerman Blvd., Suite 320, Kettering, Ohio 45429
    Attorney for Defendant-Appellant

. . . . . . . . . .

FROELICH, J.

{¶ 1}  James A. Schooler, Sr. was convicted after a jury trial in the Montgomery County Court of Common Pleas of possession of crack cocaine, in an amount less than one gram, a fifth degree felony.  The trial court sentenced him to twelve months in prison, to be

served concurrently with any sentence Schooler received on pending federal charges. Schooler's driver's license was also suspended for one year.

{¶ 2} Schooler appeals from his conviction, claiming that his counsel rendered ineffective assistance and that his conviction was against the manifest weight of the evidence. For the following reasons, the trial court's judgment will be affirmed.

I

{¶ 3} The State's evidence at trial, which consisted primarily of the testimony of Dayton Police Officer Terry Bartlett, established the following facts:

{¶ 4} At approximately 6:59 a.m. on September 13, 2010, Dayton Police Officers Adam Sharp and Terry Bartlett were dispatched to 1359 Wesleyan Road on a report of a burglary in progress. While en route to the residence, the dispatcher informed the officers that a female was in an upstairs bedroom, that she heard kicking or banging at her door, and that there was an unfamiliar maroon vehicle at her house. When the officers arrived, they saw that the driveway went along one side of the property, past the house, and curved behind the house to a detached garage. A "maroon older-style Buick" was in the driveway, with the rear of the car backed up to the garage. When the officers walked to the rear of the house, they noticed that the Buick was still running, the driver's door was open, and an individual, later identified as Schooler, appeared to be asleep in the front passenger seat.

{¶ 5} Before Officer Bartlett could approach the car and talk with Schooler, Officer Sharp yelled to Bartlett that the back door of the house had been pried or forced open. Bartlett went over to Sharp, who was by the back door. Officer Sharp yelled to someone inside the house to get on the ground and then told Officer Bartlett that the person was

running through the house. Officer Sharp chased the individual through the house while Officer Bartlett ran around the outside of the house to the front door. When Bartlett reached the front, Sharp and a man fell out of the front door together. After a struggle, the man was handcuffed. Officer Sharp remained with the man, while Officer Bartlett went back to the Buick to talk with Schooler.

{¶ 6} Bartlett approached the passenger door, opened it, and grabbed Schooler's jacket. Schooler looked at the officer, and Bartlett told him to exit the vehicle. As Schooler put his right leg out of the car and began to step out of the vehicle, he made a movement with his left hand toward the interior of the car. As Schooler did so, Officer Bartlett saw "a corner piece of a plastic baggie" fall inside the car. Officer Bartlett "kept a hold of [Schooler], had him exit the vehicle, and immediately had him face the vehicle." The officer saw that Schooler's left hand had a brace, so the officer did not handcuff that hand. According to Bartlett, Schooler stated that the brace was due to a gunshot wound that he had suffered to his wrist or forearm. Officer Bartlett placed Schooler's right hand in a handcuff and secured it to the back of Schooler's pants. The officer patted down Schooler and took him to the cruiser, which was parked in front of the house.

{¶ 7} Officer Bartlett started to return to the Buick in order to retrieve the plastic baggie. However, before Bartlett got there, Officer Sharp yelled to him that Schooler was kicking or hitting the cruiser window. Both officers ran toward the rear door of the cruiser (leaving the burglary suspect leaning against the cruiser's hood), and Bartlett opened the door. Officer Bartlett instructed Schooler not to kick the door. As the officers' attention was focused on Schooler, the burglary suspect ran away from the cruiser; Officer Sharp

pursued the suspect, quickly apprehended him, and brought him back to the cruiser.

{¶ 8} Once Officer Sharp returned, Officer Bartlett retrieved the plastic baggie from the Buick. The baggie contained a "soft white rock-like substance," which Bartlett believed to be crack cocaine. The officer tested the substance with cobalt reagent, and the substance tested positive for the presence of cocaine. A forensic chemist with the Miami Valley Regional Crime Lab later confirmed that the substance was crack cocaine with a net weight of 0.01 grams.

{¶ 9} After a jury trial, Schooler was convicted of possession of crack cocaine. He was sentenced accordingly. Schooler raises two assignments of error on appeal.

II

{¶ 10} Schooler's first assignment of error states:

{¶ 11} "APPELLANT WAS DENIED [THE] EFFECTIVE ASSISTANCE OF COUNSEL."

{¶ 12} We review alleged instances of ineffective assistance of trial counsel under the two prong analysis set forth in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, and adopted by the Supreme Court of Ohio in *State v. Bradley* (1989), 42 Ohio St.3d 136. Pursuant to those cases, trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. *Strickland,* 466 U.S. at 688. To reverse a conviction based on ineffective assistance of counsel, it must be demonstrated that trial counsel's conduct fell below an objective standard of reasonableness and that his errors were serious enough to create a reasonable probability that, but for the errors, the result of the trial would have been different. Id.

{¶ 13} First, Schooler claims that his counsel performed deficiently by failing to call Officer Sharp to testify at trial. Schooler argues that Sharp's testimony "would indicate that *** Officer Bartlett's report and testimony was inaccurate and the events of September 13, 2010 could not have occurred as described by Officer Bartlett."

{¶ 14} The record does not demonstrate how Officer Sharp would have testified had he been called as a defense witness. However, Officer Bartlett testified that Officer Sharp remained with the burglary suspect, who had been apprehended in front of the house, while Officer Bartlett returned to the Buick near the back of the house to investigate Schooler's presence at the property. There is no indication that Officer Sharp observed what occurred when Officer Bartlett removed Schooler from the vehicle and, thus, that Officer Sharp would have any relevant testimony regarding the crack cocaine in the Buick. Accordingly, based on the record before us, Schooler has not demonstrated that his counsel acted deficiently in failing to call Officer Sharp as a witness at trial.

{¶ 15} Second, Schooler claims that his original defense counsel rendered ineffective assistance by failing to call him (Schooler) as a witness at a suppression hearing and that his attorney at trial acted deficiently by failing to call him as a witness. Schooler asserts that he would have testified that he was unable to grasp the crack cocaine that he was accused of dropping from his left hand. The record does not reflect how Schooler would have testified at the suppression hearing or at trial; accordingly, we cannot say, based on the record, that Schooler's counsel should have called him as a witness. Moreover, whether to call an individual as a witness is usually a matter of strategy, to which we defer to counsel.

{¶ 16} In addition, the record reflects that Schooler waived his right to testify on his

own behalf at trial. After the State indicated that it had no more witnesses, the trial court addressed Schooler outside the presence of the jury regarding his right to testify. The court informed Schooler of his right to testify and of his obligation, if he decided to testify, to answer both his counsel's and the prosecutor's questions. The trial court also told Schooler about his right to remain silent and not to testify, and that his choice not to testify would not be considered for any purpose. Schooler indicated that he had discussed whether he wished to testify with his counsel. Schooler told the trial court that he would not testify and that he was waiving his right to testify of his own free will. When the court asked Schooler if he had any questions about his rights, Schooler said no. The record thus belies Schooler's contention that his counsel was deficient in failing to call him as a witness at trial.

{¶ 17} Schooler next asserts that his counsel was deficient in failing to pose questions to the State's witnesses that he (Schooler) wanted to have asked. The record does not reflect what these questions would have been, what the answers might have been, or how they would have made a difference to the outcome of Schooler's trial. Moreover, whether to ask particular questions is a matter of sound trial strategy, and we find no indication in the record that counsel was deficient in his cross-examination of the State's witnesses.

{¶ 18} Finally, Schooler contends that his trial counsel should have objected to the State's presentation of evidence regarding the burglary, which he claims was irrelevant to the charge against him. After opening statements and before the State's first witness, the trial court gave the following instruction to the jury:

{¶ 19} "Ladies and gentlemen, before we begin with this witness, I will tell you that you're going to hear some evidence about a possibility of a call of a burglary at 1359

Wesleyan Drive [sic] on the night of this event. Sometimes evidence is admitted for a limited purpose. And the jury can only consider that evidence for the limited purpose it is intended. This evidence is entered for the purpose of describing what happened and allowing you to follow the rest of the evidence as it is presented. The defendant in this case is not charged with burglary. You may proceed."

{¶ 20} Given the trial court's instruction to the jury, which we presume the jury followed, we find no basis to conclude that Schooler was prejudiced by evidence regarding the burglary.

{¶ 21} Schooler's first assignment of error is overruled.

III

{¶ 22} Schooler's second assignment of error states:

{¶ 23} "THE GUILTY VERDICTS [SIC] RENDERED BY THE JURY WERE [SIC] AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶ 24} "[A] weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." *State v. Wilson*, Montgomery App. No. 22581, 2009-Ohio-525, ¶12. When evaluating whether a conviction is contrary to the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins,* 78 Ohio St.3d 380, 387, 1997-Ohio-52, citing *State v. Martin* (1983), 20 Ohio

App.3d 172, 175.

**{¶ 25}** Because the trier of fact sees and hears the witnesses at trial, we must defer to the factfinder's decisions whether, and to what extent, to credit the testimony of particular witnesses. *State v. Lawson* (Aug. 22, 1997), Montgomery App. No. 16288. However, we may determine which of several competing inferences suggested by the evidence should be preferred. Id.

**{¶ 26}** The fact that the evidence is subject to different interpretations does not render the conviction against the manifest weight of the evidence. *Wilson* at ¶14. A judgment of conviction should be reversed as being against the manifest weight of the evidence only in exceptional circumstances. *Martin,* 20 Ohio App.3d at 175.

**{¶ 27}** Schooler claims that the jury lost its way in concluding that he was capable of grasping the small baggie with crack cocaine. Schooler emphasizes that his left hand was in a brace and that Officer Bartlett testified that Schooler had said that he (Schooler) had been shot in the wrist or forearm. Schooler argues that his injury was so severe that Officer Bartlett was reluctant to take off the brace or to handcuff Schooler's left hand due to the injury.

**{¶ 28}** During cross-examination, Schooler's counsel questioned Officer Bartlett about the brace on Schooler's left hand, as follows:

**{¶ 29}** "Q: Okay. Now, you mentioned about the brace giving you some difficulty with the handcuffs. Did the – if you remember – how high up did the brace go on his hand, on his left hand?

**{¶ 30}** "A: It was on his left hand. It was like around his thumb in here (indicating).

I believe it was like a three-quarters length or – of his arm. Just right here (indicating) it was braced. It had like a Velcro strap on it; it was black.

{¶ 31} "Q: Okay. Now, did the top of it – you said it went over his thumb then (indicating)?

{¶ 32} "A: It was around his thumb. It was like over here (indicating). I know he could bend his fingers. He could do this stuff.

{¶ 33} "Q: Okay.

{¶ 34} "A: It wasn't cutting off his dexterity.

{¶ 35} "Q: Okay. Now, how do you know he could bend his fingers?

{¶ 36} "A: Because I was there with him. His hands were bent. They weren't straight out like this (indicating). It would – looking at his hands going up to the car, when they were in his position, they weren't straight like this, they were – they had dexterity in them. They were bent. So to me it tells me that the brace does not prevent his movement."

{¶ 37} Officer Bartlett testified that he saw Schooler make a movement with his left hand toward the interior of the Buick as Schooler was stepping out of the car. At that time, the officer saw the corner of a plastic baggie fall. It was later determined that the baggie contained a small amount of crack cocaine. Although Schooler's left hand was in a brace and the officer was reluctant to use a handcuff on that hand, Officer Bartlett testified that he saw the left hand in a curved position and he did not believe the brace inhibited Schooler's dexterity. Viewing the evidence as a whole, we cannot conclude that the jury lost its way when it convicted Schooler of possession of crack cocaine.

{¶ 38} Schooler's second assignment of error is overruled.

IV

{¶ 39} The trial court's judgment will be affirmed.

. . . . . . . . . .

FAIN, J. and DONOVAN, J., concur.

Copies mailed to:

Laura M. Woodruff
Scott Bissell
Hon. Dennis Adkins