**[Cite as *State v. Body*, 2020-Ohio-4397.]**

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 28672 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 2019-CRB-1578 |
| v. | : | |
| | : | (Criminal Appeal from |
| LAQUITA M. BODY | : | Municipal Court) |
| | : | |
| Defendant-Appellant | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 11th day of September, 2020.

. . . . . . . . . . .

NOLAN C. THOMAS, Atty. Reg. No. 0078255, City of Kettering Prosecutor's Office, 2325 Wilmington Pike, Kettering, Ohio 45420
        Attorney for Plaintiff-Appellee

THADDEUS HOFFMEISTER, Atty. Reg. No. 0081977 and Legal Interns Davis Shwartz, Kensy Gordon, and Clint Jackson, 300 College Parke Drive, Keller Hall, Dayton, Ohio 45469
        Attorneys for Defendant-Appellant

. . . . . . . . . . . .

FROELICH, J.

{¶ 1} After a bench trial in the Kettering Municipal Court, Laquita M. Body was found guilty of menacing, a fourth-degree misdemeanor. The trial court imposed 30 days in jail (25 days suspended and credit for one day served), two years of unsupervised probation, a $75 fine, and court costs. The court stayed the sentence pending appeal. Body appeals from her conviction, claiming that her conviction was against the manifest weight of the evidence. For the following reasons, the trial court's judgment will be affirmed.

{¶ 2} When reviewing an argument challenging the weight of the evidence, an appellate court may not substitute its view for that of the trier of fact, but reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 3} Because the trier of fact sees and hears the witnesses at trial, we must defer to the factfinder's decisions whether, and to what extent, to credit the testimony of particular witnesses. *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684, *4 (Aug. 22, 1997). The fact that the evidence is subject to different interpretations does not render the conviction against the manifest weight of the evidence. *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 14. A judgment of conviction should be reversed as being against the manifest weight of the evidence only in exceptional

circumstances. *Martin* at 175.

**{¶ 4}** Shanecole Elmore-Canty was the State's sole witness. In 2019, she lived in a ground-floor apartment with her three children, the youngest of which was an infant. Rejuan Yates is the father of her youngest child. At trial, Elmore-Canty was pregnant with another child by Yates.

**{¶ 5}** According to Elmore-Canty, shortly before midnight on August[1] 27, 2019, she was home watching television; Yates was also at her apartment. Around midnight, Elmore-Canty decided to go outside to smoke, and she went out into the parking lot area. Elmore-Canty paced the sidewalk, about five or six feet from the building's door. As she came outside, Elmore-Canty saw Body drive up in a red Chevrolet Impala. (On cross-examination, Elmore-Canty clarified that she first heard Body's voice, then looked up and saw Body in her vehicle.) Elmore-Canty testified that Body was "nobody" to her, but Body "supposedly" was in a relationship with Yates.

**{¶ 6}** Elmore-Canty testified that Body lowered her car window and said, "B word, what are you doing out, what you coming out here for?" Elmore-Canty stated that Body "taunted" her and said that she would "beat [Elmore-Canty's] a-s-s." Elmore-Canty testified Body's tone of voice was "very aggressive" and "like she really wanted to harm me." Body got out of her vehicle and approached Elmore-Canty, coming as close as two or three feet from Elmore-Canty. However, Elmore-Canty turned and walked back to her apartment to get her phone and call the police. Elmore-Canty kept looking back at Body to make sure that Body did not "run up on" her.

---

[1] On a few occasions, the prosecutor asked Elmore-Canty about the events of October 27, 2019. It appears that the prosecutor misspoke and the correct date was August 27.

{¶ 7} Elmore-Canty testified that she felt "very threatened" by Body's behavior. She indicated that Body had threatened her several times previously, including when Elmore-Canty was pregnant. Elmore-Canty stated that, based on Body's statements outside of her apartment, she was afraid that Body would harm her. Elmore-Canty indicated that Body did not live at that those apartments, and Elmore-Canty knew of no reason why Body would be at her apartment at midnight.

{¶ 8} As Elmore-Canty went back into the building, Yates went outside to talk to Body, asking her (Body) why she was there. Elmore-Canty then called the police from her apartment. Yates did not return to Elmore-Canty's apartment.

{¶ 9} On cross-examination, defense counsel questioned Elmore-Canty about why she did not go back inside immediately upon seeing Body. Elmore-Canty stated that she had lit her cigarette while coming out the door, and she wanted to finish her cigarette. Elmore-Canty further testified that she ended up throwing her cigarette down without finishing it and returned to her apartment when she saw Body exit her car. Elmore-Canty testified that she had been smoking since February 2019, she did not smoke often, and she never smoked in front of Yates.

{¶ 10} Elmore-Canty further testified on cross-examination that she had repeatedly asked Body not to come to her home and to "quit bothering me." Defense counsel asked Elmore-Canty why she believed that Body would harm her during this particular incident. Elmore-Canty responded with questions: why would Body come over at midnight?, and if Body were Yates's girlfriend, wouldn't she be irate and looking for Yates? Elmore-Canty further stated that Body had conveyed messages in the past that she was going to hurt Elmore-Canty and Elmore-Canty's children, and Elmore-Canty wanted to document

Body's behavior in case something happened. Elmore-Canty testified that she was genuinely scared by those prior threats and previously had called the police. She also indicated that she and Body had "exchanged words" before, but Elmore-Canty did not believe that she had threatened Body. Elmore-Canty stated that she was not bothered by Yates's relationship with Body, because Body and Yates were just roommates.

{¶ 11} Yates was the sole witness for the defense. He stated that Body was his girlfriend, and that he had a child with Elmore-Canty. Yates testified that he went to Elmore-Canty's apartment around 11:00 p.m. on August 27 so that he could see his child; Yates indicated that he was with his baby "for a minute. I stayed for a sec." Yates testified that he drove himself in Body's car (a red Impala), and he parked around the corner so that Elmore-Canty would not see it. Yates indicated that he and Elmore-Canty would have argued if she had seen the vehicle. Yates stated that Body did not come to Elmore-Canty's apartment with him, and she would have been at home.

{¶ 12} Yates further testified that he had never known Elmore-Canty to be afraid of Body. He indicated that the two women had argued in the past, but he did not stay to watch; he had never seen them involved in a physical altercation. Yates stated that he has known Elmore-Canty since 2016, and she does not smoke cigarettes.

{¶ 13} On cross-examination, Yates stated that he and Body communicated with text messages, but he denied texting with her from Elmore-Canty's apartment on August 27. When asked if Body had a temper, Yates responded that she did not; rather, she "just speak[s] what's on her mind." Yates acknowledged that he had signed a criminal complaint against Body earlier in the year, alleging that Body had tried to cause him physical harm, but Yates claimed that the police coerced him into signing the complaint.

Yates also denied being present when Body had hit someone in the head at a McDonald's drive-thru.

{¶ 14} Body was charged with menacing, in violation of R.C. 2903.22. That statute provides, in relevant part: "No person shall knowingly cause another to believe that the offender will cause physical harm to the person or property of the other person, the other person's unborn, or a member of the other person's immediate family." R.C. 2903.22(A).

{¶ 15} At the conclusion of the trial, the trial court found Body guilty of menacing. The court explained:

> * * * Mr. Yates, because he confirmed or corroborated at least some of what she was saying, and I didn't find him to be necessarily credible in any regard, and because of that I think she was credible. And because of that, I am going to find her, Defendant[,] guilty of the M-4. Despite her testifying that this happens all the time, and that she's never been physically harmed. In this particular instance, she testified Defendant was at her home at midnight approaching her. Both Mr. Yates and the victim agreed that Mr. Yates was there that night, and I think it's correct that's everybody's mad about that, which makes sense. So that's it, okay. * * *

{¶ 16} Body contends that the trial court did not find Yates to be credible "in any regard," and that it found Elmore-Canty credible simply because some of what Yates said was consistent with Elmore-Canty's testimony. Body argues: "Credibility determinations should be based on the individual, not on the lack of another." Body thus claims that the trial court was "lost" when it rendered its verdict.

**{¶ 17}** Although the trial court could have used more precise wording when it rendered its verdict, we disagree that the court was lost or improperly made credibility findings. Read as a whole, the trial court found Elmore-Canty's and Yates's testimony to be consistent in some respects, and where they diverged, the court believed Elmore-Canty's testimony as to the events of August 27, 2019. Specifically, the trial court's oral pronouncement reflects its findings that Body was present at Elmore-Canty's apartment building at midnight on August 27 and that Body approached her in a threatening manner. And, although Body had not physically assaulted Elmore-Canty previously, the court apparently credited Elmore-Canty's testimony that she felt "very threatened" during this encounter.

**{¶ 18}** Body further contends that the trial court should have considered the fact that no police officer testified and there was no video documentation of the encounter. She argues that, without additional evidence outside of the three people involved in this "triangular" relationship, the court should have found reasonable doubt. Body claims that Elmore-Canty's testimony was "inconsistent at best, and fiction at worst." Finally, Body contends that the evidence did not demonstrate that Elmore-Canty actually believed that Body would cause her or her children physical harm.

**{¶ 19}** In reaching its verdict, the trial court was free to believe all, part, or none of the testimony of each witness and to draw reasonable inferences from the evidence presented. *State v. Baker*, 2d Dist. Montgomery No. 25828, 2014-Ohio-3163, ¶ 28. It was the province of the trial court, as the trier of fact, to weigh the evidence and determine whether the State had proven, beyond a reasonable doubt, that Body committed menacing.

**{¶ 20}** Upon review of the entire record, we cannot conclude that the trial court lost its way in finding Body guilty of menacing. Elmore-Canty's testimony alone, if believed, was sufficient to support Body's conviction. *See, e.g., State v. Rybak*, 2d Dist. Montgomery No. 23938, 2011-Ohio-2070, ¶ 9. Elmore-Canty testified that Body drove to her apartment building, taunted her and threatened to "beat [her] a-s-s." Elmore-Canty stated that Body used a "very aggressive" tone of voice, and Body got out of her car and approached Elmore-Canty, coming as close as two or three feet from Elmore-Canty. Although Elmore-Canty had not previously been assaulted by Body, she testified that she felt threatened during this incident. The trial court noted that it "made sense" that Body would be angry that her boyfriend was at Elmore-Canty's apartment at midnight. Although the trial court could have found certain aspects of Elmore-Canty's testimony to be less than credible, Body's conviction for menacing was not against the manifest weight of the evidence.

**{¶ 21}** Body's assignment of error is overruled.

**{¶ 22}** The trial court's judgment will be affirmed.

. . . . . . . . . . . . .

TUCKER, P.J. and WELBAUM, J., concur.

Copies sent to:

Nolan C. Thomas
Thaddeus Hoffmeister
Davis Shwartz
Kensy Gordon
Clint Jackson

Hon. James F. Long