[Cite as *State v. Dzekunskas*, 2024-Ohio-2287.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
GREENE COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| Appellee | : | C.A. No. 2023-CA-69 |
| v. | : | Trial Court Case No. 23 CRB 00869 |
| BRANDON JOSEPH DZEKUNSKAS | : | (Criminal Appeal from Municipal Court) |
| Appellant | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on June 14, 2024

. . . . . . . . . . .

ADAM JAMES STOUT, Attorney for Appellant

DANIELLE E. SOLLARS, Attorney for Appellee

. . . . . . . . . . . .

LEWIS, J.

{¶ 1} Defendant-Appellant Brandon Joseph Dzekunskas appeals from a judgment of the Xenia Municipal Court convicting him of one count of domestic violence following a bench trial. For the following reasons, we will affirm the judgment of the trial court.

    I.      Facts and Course of Proceedings

**{¶ 2}** On July 14, 2023, Dzekunskas was involved in an incident with Autumn Moore, his mother, at an apartment on Smith Avenue in Xenia, where they both lived. Ultimately, Dzekunskas was arrested and charged with one count of domestic violence, a first-degree misdemeanor in violation of R.C. 2919.25(A), and one count of assault, a first-degree misdemeanor in violation of R.C. 2903.13(A).

**{¶ 3}** A bench trial was held in Xenia Municipal Court on October 11, 2023. Autumn Moore testified first. Tr. 3-11. She stated that her son had lived with her at an apartment on Smith Avenue in Xenia from September 2022 through the date on which he was arrested. There recently had been tension between the two of them, and Dzekunskas was exhibiting erratic behavior On July 14, 2023, she and Dzekunskas were arguing. He followed her to her bedroom, pushed her onto her bed, hit her with a closed fist, and grabbed her briefly around her neck. He then left the room and called the police. Moore sat on the porch and Dzekunskas waited on the sidewalk until the police arrived. On cross-examination, Moore testified that she is fair-complected and her skin becomes flush when she is stressed. She denied drinking the night of the incident with her son.

**{¶ 4}** Alexandria Grace Mumpower, a Xenia police officer, testified next. *Id.* at 11-24. She had been dispatched to Moore's residence on July 14, 2023, in response to a call from Dzekunskas, who claimed that he was arguing with his mother over her drinking and her possible violation of probation. Officer Mumpower testified that when she arrived at the residence, Moore "seemed sad, shaken up, teary." *Id.* at 13. Officer Mumpower agreed that Moore appeared to still be under the stress of whatever event had occurred.

Officer Mumpower then testified to the following interaction she had with Moore:

> So she explained to me that her and her son had been arguing. She was frustrated that he wasn't holding up his own household responsibilities, things of that nature. And I noticed that her neck was red in a way that looked like - - so I asked her about the redness on her neck. Specifically, you know, how did that happen. Initially she said well, I didn't do it myself. So I asked more questions. I don't remember what those specific questions were, but then eventually she felt comfortable speaking with me and telling me what happened, that her son had struck her and strangled her.

*Id.* at 14-15.

{¶ 5} Officer Mumpower also testified that the redness was localized on different spots on Moore's neck and there was a darker red color around her throat. She did not observe any petechiae in Moore's eyes or thumbprints on her neck. Further, she did not observe any drug use by Moore and did not recall Moore being intoxicated.

{¶ 6} Dzekunskas testified last at the trial. *Id.* at 25-27. Although he was in jail much of the three months immediately preceding the trial, he previously had resided with Moore at an apartment on Smith Avenue in Xenia. He had been diagnosed as schizoaffected. He called the police on July 14, 2023, because his mother was harassing him, and he felt he was in danger. According to Dzekunskas, he believed Moore had been drinking based on the text messages she had sent to him and the empty bottles in the house. He testified that he did not put his hands on her.

{¶ 7} The trial court found Dzekunskas guilty of one count of domestic violence, a first-degree misdemeanor.   The court dismissed the one count of assault.   The court sentenced Dzekunskas to 180 days in jail, giving him credit for time served and suspending the final 80 days of the jail-sentence.   Dzekunskas also was ordered to pay a $250 fine and court costs and to undergo drug and alcohol, anger management, and mental health assessments.   The court placed Dzekunskas on probation for two years.

{¶ 8} Dzekunskas filed a timely notice of appeal from the trial court's judgment.


II.      Dzekunskas' Conviction Was Not Against the Manifest Weight of the Evidence

{¶ 9} Dzekunskas' sole assignment of error states:

Defendant's Conviction Under [R.C.] 2919.25 was Against the Manifest Weight of the Evidence.

{¶ 10} In his assignment of error, Dzekunskas contends that the trier of fact lost its way in finding that he had assaulted his Mother "because the facts testified to by [his Mother] ultimately [were] contradicted by evidence introduced by Defense counsel." Appellant's Brief, p. 7.   In particular, Dzekunskas argues that the redness on Moore's neck could have been simply due to her fair complexion and stress rather than to any attempt by Dzekunskas to strangle her.   Further, Dzekunskas notes that Officer Mumpower did not recall any signs of petechiae in Moore's eyes or thumbprints on her neck, which can be signs of strangulation.   *Id.*

{¶ 11} "[A] weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more

believable or persuasive." (Citation omitted.) *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 12. "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). The fact that the evidence is subject to different interpretations on the matter of guilt or innocence does not render a conviction against the manifest weight of the evidence. *Wilson* at ¶ 14. A judgment of conviction should be reversed as being against the manifest weight of the evidence only in exceptional circumstances in which the evidence weighs heavily against the conviction. *Martin* at 175.

{¶ 12} Dzekunskas was convicted of one count of domestic violence in violation of R.C. 2919.25(A), which provides that "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member." The evidence was undisputed at trial that Moore is Dzekunskas' mother and that they lived together on July 14, 2023. Further, Moore testified that Dzekunskas pushed her onto her bed, hit her with a closed fist, and briefly grabbed her around the neck. Officer Mumpower testified that she saw dark red marks around Moore's neck and that Moore told her that Dzekunskas had struck her with a closed fist and briefly put his hands around her neck. Although Dzekunskas testified that he did not put his hands on Moore, the trial court clearly believed the testimony of Moore and Officer Mumpower over Dzekunskas. There is nothing in the record that leads us to believe the trial court clearly lost its way in doing so. Further,

Dzekunskas' attempt to overturn his conviction on appeal by pointing out that Moore's complexion is susceptible to redness when she is stressed does not weigh heavily against the conviction. The fact that the evidence is subject to different interpretations on the matter of guilt or innocence does not render his conviction against the manifest weight of the evidence.

{¶ 13} On this record, we cannot conclude that this is one of the exceptional circumstances in which the evidence weighs heavily against the conviction. Therefore, Dzekunskas' conviction is not against the manifest weight of the evidence. The sole assignment of error is overruled.

III.    Conclusion

{¶ 14} Having overruled the assignment of error, we will affirm the judgment of the trial court.

. . . . . . . . . . . . .

EPLEY, P.J. and TUCKER, J., concur.