[Cite as *State v. Moyer*, 2011-Ohio-3506.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

STATE OF OHIO                                    :

    Plaintiff-Appellee                       :          C.A. CASE NO.    24222

v.                                               :          T.C. NO.    10CRB4666

JENNIFER M. MOYER                                :          (Criminal appeal from
                                            Municipal Court)
    Defendant-Appellant                      :

                                                 :

. . . . . . . . . .

**O P I N I O N**

Rendered on the ____15th____ day of ____July____, 2011.

. . . . . . . . . .

AMY B. MUSTO, Atty. Reg. No. 0071514, Assistant City Prosecutor, 335 W. Third Street, Room 372, Dayton, Ohio 45402
      Attorney for Plaintiff-Appellee

BRADLEY S. BALDWIN, Atty. Reg. No. 0070186, 854 East Franklin Street, Centerville, Ohio 45459
      Attorney for Defendant-Appellant

. . . . . . . . . .

FROELICH, J.

{¶ 1} Jennifer M. Moyer was convicted after a bench trial in the Dayton Municipal

Court of two counts of aggravated menacing, first degree misdemeanors, based on threats she made to Courtney Fecher and her unborn child. Moyer was acquitted of a third count of aggravated menancing, which was based on threats she made to Gloriastine Coleman.[1] The court sentenced Moyer to 90 days in jail on both counts (all of which was suspended), six months of basic community control, two years of non-reporting community control, and a $200 fine. The community control sanctions included that Moyer have no contact with the complainant (Courtney Fecher) and that she attend anger management classes. Moyer's sentence was stayed by the trial court pending appeal.

{¶ 2} Moyer appeals from her convictions, claiming that her convictions were against the manifest weight of the evidence.

{¶ 3} "[A] weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." *State v. Wilson*, Montgomery App. No. 22581, 2009-Ohio-525, ¶12. When evaluating whether a conviction is contrary to the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, quoting *State v. Martin* (1983), 20 Ohio

---

[1]R.C. 2903.21(A), the aggravated menacing statute, provides: "No person shall knowingly cause another to believe that the offender will cause serious physical harm to the person or property of the other person, the other person's unborn, or a member of the other person's immediate family."

App.3d 172, 175; *State v. Elmore*, 111 Ohio St.3d 515, 2006-Ohio-6207, ¶44.

{¶ 4} Because the trier of fact sees and hears the witnesses at trial, we must defer to the factfinder's decisions whether, and to what extent, to credit the testimony of particular witnesses. *State v. Lawson* (Aug. 22, 1997), Montgomery App. No. 16288. However, we may determine which of several competing inferences suggested by the evidence should be preferred. Id.

{¶ 5} The fact that the evidence is subject to different interpretations does not render the conviction against the manifest weight of the evidence. *Wilson* at ¶14. A judgment of conviction should be reversed as being against the manifest weight of the evidence only in exceptional circumstances. *Martin*, 20 Ohio App.3d at 175.

{¶ 6} The State's evidence at trial, which consisted of Coleman's and Fecher's testimony, established the following facts.

{¶ 7} Moyer is the ex-girlfriend of Coleman's son, Marcellus. Moyer and Marcellus have a three-year-old child together. Fecher is Marcellus's current girlfriend. In May 2010, Fecher was approximately 6 months pregnant with Marcellus's child.

{¶ 8} At approximately 10:30 p.m. on May 22, 2010, Coleman and Fecher were at the Montgomery County Jail in Dayton to post bail for Marcellus, who had been arrested for a traffic violation. At the same time, Moyer came to the jail to pick up one of her sisters who, unbeknownst to Moyer, had already been released from custody. Coleman greeted Moyer when Moyer came into the building; Moyer did not respond.

{¶ 9} Moyer, Coleman, and Fecher completed their business at the jail at approximately the same time. After Moyer learned that her sister was no longer at the jail,

Moyer called another sister, Tina. While still on the phone, Moyer looked at Fecher and said, "Tina, you wouldn't believe who's down here, Marcellus' baby mama. I ought to cut that mother fucking baby out of that bitch's stomach." Moyer was standing approximately three feet away from Fecher when she made this statement. Coleman testified that she responded, "Jennie, that is not necessary." Moyer then said to Coleman, "Fuck you, bitch. I'll spit in your face and whip your ass." Coleman then told Moyer that she would "kick her ass" instead.

{¶ 10} Coleman and Moyer argued back and forth, each threatening "to kick [the other's] ass." Fecher and Coleman both testified that Moyer said that she didn't "give a fuck about going to jail." Moyer also repeated that she would cut Fecher's baby "out of [her] stomach."

{¶ 11} According to Coleman, Moyer and Fecher then "exchanged words," and Moyer threatened to "beat [Fecher's] ass." Coleman testified that Fecher responded, "You're lucky I'm pregnant otherwise I'd kick your ass." However, Fecher testified (and Moyer agreed) that Fecher did not make any threats or argue with Moyer. Eventually, Coleman told Moyer that she needed to leave. Moyer walked away down Second Street.

{¶ 12} Coleman testified that Moyer had a reputation for being violent when she is angry. Coleman was scared that Moyer would "really beat me up." Fecher also testified that Moyer had threatened her on numerous prior occasions, and Fecher indicated that there had also been non-verbal incidents between the two. As a result, Fecher took Moyer's threats to hurt her and her unborn child seriously.

{¶ 13} After their encounter with Moyer, Coleman and Fecher approached a sheriff's

cruiser that was parked in the middle of Second Street and, based on that officer's advice, they called the Dayton police. They waited approximately two hours before police responded in order to make a report. Moyer did not contact any law enforcement agency.

{¶ 14} Moyer and her sister, Tina Moyer, testified on Moyer's behalf. Moyer testified that she had tried to call Marcellus earlier in the day on May 22, and a woman who identified herself as Marcellus's "baby mama" answered the phone. Moyer stated that she had not known that Fecher was pregnant until that time.

{¶ 15} Moyer further testified that at approximately 10:30 p.m., she went to the Montgomery County Jail to pick up her younger sister, Maranda. When she learned that Maranda was not there, Moyer called her sister, Tina, to see if Tina would help find Maranda; Moyer was concerned because Maranda had threatened to kill herself.

{¶ 16} As Moyer turned around, she noticed Fecher. Moyer testified that she said to Tina, "Wow, Tina. She really is pregnant. Like and big pregnant. I had no idea she was pregnant. I can't believe Marcellus did that." Moyer testified that she heard Coleman respond, "It's none of your business is [sic] she's pregnant. He don't want you. He's with her now. You're a fat bitch. He's with her; you need to get over it." Moyer replied, "Gloria, really I don't want him; I broke up with him." Moyer told Coleman that she was talking with her sister and that she "didn't have time for this." Moyer testified that she walked outside and was followed by Coleman and Fecher.

{¶ 17} According to Moyer, Coleman continued to "badger" Moyer outside the jail. Coleman told Moyer, "Bitch, you're lucky we're at the jail. I would kick your ass. I get tired of you running your mouth and causing my son all these problems. Bitch, I'll kick

your ass." Moyer repeated that she "didn't have time for this" and that she would "kick [Coleman's] ass" if Coleman tried to fight her. When the three separated, Moyer went down the sidewalk along Second Street toward her car; she saw Coleman and Fecher approach a police cruiser that was parked in the middle of the street.

{¶ 18} Tina Moyer testified that she was on the phone with Moyer on May 22, 2010, and that Moyer reported that Marcellus's mother and his new "baby mama" were "getting into her face." Tina Moyer could tell that people were yelling in the background, but she could not understand what was said. Tina Moyer testified that she repeatedly advised Moyer to keep calm, think about her son, and walk away from the situation. Tina heard Moyer respond to some of the yelling, saying "What you're going to beat my ass" and that she "was leaving." Tina did not hear Moyer make any threats.

{¶ 19} Tina Moyer denied that Moyer had told her over the phone that Fecher was pregnant. Tina testified that she already knew that Fecher was pregnant, because she had seen Marcellus at Wal-Mart about a month before the May 22 argument. Tina testified that she had not told Moyer about the pregnancy. Tina further testified that Moyer had never said anything negative about Fecher or her pregnancy.

{¶ 20} At the conclusion of the trial, the trial court found Moyer guilty of aggravated menacing with respect to Fecher and her unborn child, but not guilty of aggravated menacing as to Coleman.

{¶ 21} Upon review of the evidence, we cannot say that the trial court's conclusion was against the manifest weight of the evidence. As acknowledged by the prosecutor and defense counsel during their closing arguments, this case revolved around the credibility of

the witnesses. Coleman and Fecher each testified that Moyer threatened to cut Fecher's baby "out of that bitch's stomach." Fecher testified that Moyer repeated that statement three times and that she (Fecher) took the threat seriously based on prior encounters between the women. Moyer acknowledged that Fecher did not make threats at the jail (as Fecher had claimed during her testimony). The primary dispute at trial appears to have been whether Moyer started the altercation with threats against Fecher and her unborn child or, instead, Coleman was the aggressor who "badgered" Moyer with threats and followed her out of the jail. The trial court apparently believed that Moyer had made the threats of serious physical harm against Fecher and her unborn child. Based on the evidence, we cannot find that the trial court "lost its way" in reaching that conclusion.

{¶ 22} The assignment of error is overruled.

{¶ 23} The trial court's judgment will be affirmed.

. . . . . . . . . .

HALL, J. and RICE, J., concur.

(Hon. Cynthia Westcott Rice, Eleventh District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio).

Copies mailed to:

Amy B. Musto
Bradley S. Baldwin
Hon. John S. Pickrel