[Cite as *State v. Robinson*, 2011-Ohio-3736.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

STATE OF OHIO                                    :

    Plaintiff-Appellee                        :            C.A. CASE NO.    24204

v.                                                        :            T.C. NO.    09CR3831

CORY W. ROBINSON                         :              (Criminal appeal from
                                                                    Common Pleas Court)

    Defendant-Appellant                  :

                                                :

. . . . . . . . . .

**O P I N I O N**

Rendered on the     29th     day of     July     , 2011.

. . . . . . . . . .

TIMOTHY J. COLE, Atty. Reg. No. 0084117, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
      Attorney for Plaintiff-Appellee

PETER R. CERTO, Atty. Reg. No. 0018880, 1700 One Dayton Centre, One South Main Street, Dayton, Ohio 45402
      Attorney for Defendant-Appellant

. . . . . . . . . .

DONOVAN, J.

{¶ 1}   Defendant-Appellant Cory W. Robinson appeals his conviction and sentence

for one count of possession of crack cocaine, in violation of R.C. 2925.11(A), a felony of the

first degree, and one count of possession of drug paraphernalia, to wit: digital scale, in

violation of R.C. 2925.14(C)(1), a misdemeanor of the fourth degree. After a jury trial, Robinson was found guilty of the charged offenses and sentenced to a term of seven years in prison. Robinson filed a timely notice of appeal with the Court on August 16, 2010.

I

{¶ 2} On November 8, 2009, at approximately 3:00 AM, Officer Berger was patrolling the Fifth District when he observed a vehicle run a red light on West Hillcrest. Officer Berger stopped the vehicle on England Avenue between St. James and St. Johns. When Officer Berger ran the license plate of the vehicle, he found the car to be registered to Cory Robinson (hereafter "Cory," as this case deals primarily with two individuals with the same last name, thus they will be referred to by first name for clarity). Upon reaching the driver's side of the vehicle, Officer Berger noticed that the driver was the sole occupant of the vehicle. He asked the driver if he knew why he was stopped and the driver admitted that he had failed to stop for the red light. Officer Berger also asked if there was any reason why he was not wearing a safety belt, and the driver said there was not.

{¶ 3} Officer Berger asked the driver for his license and proof of insurance. Although the driver produced his license, he did not provide proof of insurance. Officer Berger took the license and looked at the photo, verifying that the driver was the same person that was depicted therein.

{¶ 4} While Officer Berger was writing the traffic citation, Cory got out of the car and ran behind a house off England. Cory was wearing blue jeans, a tan jacket, and glasses. After Cory ran into a neighboring yard, he tried to jump a fence and fell to the ground. At that time, Officer Berger saw a plastic baggie filled with a white substance fall

from Cory's person.   Officer Berger did not pursue Cory.

{¶ 5}   When Officer Berger walked over to the area where he saw Cory jump the fence, he located a baggie, which contained over 60 grams of crack cocaine, the glasses Cory was wearing when he was pulled over, a digital scale, and a cell phone.   Although the ground was wet with fresh dew, the items that Officer Berger recovered were neither wet nor covered in any debris. Furthermore, even though it was dark outside and the yard which Cory ran into did not have any lighting, Officer Berger testified that he was able to see the baggie fall because it was white and it stuck out in the dark.   Additionally, the lights on the cruiser and the spotlight were on, which helped to illuminate the general area.

{¶ 6}   Thereafter, Officer Berger issued Cory two traffic citations: running a red light and failure to wear a safety belt.  For those offenses, Cory was required to attend traffic court several weeks after the incident.  Both Officer Berger and Cory were in Courtoom 1B on a scheduled date for the traffic violations, however, because the case was continued, Officer Berger was not required to testify and he had no direct contact with Cory in court.   After that court date, Officer Berger again pulled Cory over for a traffic violation. At that time, Cory stated that he recognized Officer Berger as a police officer who had previously pulled him over, and acknowledged seeing him in the courtroom on the traffic offense court date.

{¶ 7}   On February 17, 2010, Cory was indicted on one count possession of crack cocaine in an amount which equaled or exceeded 25 grams but less than 100 grams, and one count possession of drug paraphernalia, to wit: a digital scale.   At trial, Officer Berger identified Cory as the individual he stopped on November 8, 2009 who discarded the drugs

and digital scale. Officer Berger testified that he matched the license photo with the driver because on previous occasions individuals have tried to use an identification that did not actually belong to them.

{¶ 8} During the jury trial, the defense put Daryl Robinson ("Daryl"), Cory's uncle, on the stand. Daryl testified that he was with Cory for the majority of the day of the traffic stop. After midnight, the two men left a party together, and because Cory had been drinking excessively, Daryl drove Cory's car, a blue Lincoln Continental. Daryl dropped Cory off at a restaurant down the street. After dropping Cory off, Daryl drove up Hillcrest, through a yellow light, where he was pulled over by a police officer.

{¶ 9} Daryl testified that he gave Officer Berger Cory's driver's license because he did not have a driver's license of his own. Daryl claimed that because he knew he was going to go to jail, he decided to take off. Daryl ran through the houses and when he tried to jump over the fence, he slipped and fell. He testified that he did not remember dropping anything, but he could have dropped his glasses or keys, as he was wearing glasses he had borrowed from Cory. However, Daryl stated that he did not have drugs on him. Daryl also testified that he felt compelled to come forward with his story because he did not want his nephew to face these drug charges, and that he would just fight the drug case himself.

{¶ 10} After hearing all the testimony, a jury found Cory Robinson guilty of Possession of Crack Cocaine in an amount equal to or exceeding 25 grams, but less than 100 grams, and guilty of Possession of Drug Paraphernalia, to wit: a digital scale. Cory was sentenced to a mandatory term of seven years for the possession of cocaine charge and a term of thirty days for the drug paraphernalia offense, to be served concurrently. Cory was

also ordered to pay a mandatory fine of $20,000, his license was suspended for three years, and he was ordered to five years of post-release control.

{¶ 11} It is from this judgment that Cory now appeals.

II

{¶ 12} Cory's first assignment of error is as follows:

{¶ 13} "DEFENDANT/APPELLANT'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶ 14} In his first, and only, assignment of error, the defendant claims that the Court's finding of guilt was against the manifest weight of the evidence that Cory was ever in possession of a controlled substance or in possession of drug paraphernalia.

{¶ 15} In determining whether a conviction is against the manifest weight of the evidence, the appellate court must "review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *State v. Thompson*, Montgomery App. No. 23581, 2010-Ohio-4535 (citing *State v. Thompkins,* (1997) 78 Ohio St.3d 380, 387.) In order to find that there was injustice in the court below, the appellate court must find that the guilty verdict was contrary to the manifest weight of the evidence. *State v. Wilson*, Montgomery App. No. 22581, 2009-Ohio-525.

{¶ 16} A manifest weight of the evidence argument challenges the believability of the witnesses, the evidence adduced at trial, and the inferences therefrom. *State v. Wilson*, Montgomery App. No. 22581, 2009-Ohio-525. However, just because the evidence could

create different interpretations as to the defendant's guilt or innocence does not necessitate a reversal on the manifest weight of the evidence except in exceptional circumstances. Id. Instead, this court must find that the guilty verdict was contrary to the manifest weight of the evidence presented at the trial. Id. In order for this court to find a reversal warranted, we must sit as the "thirteenth juror" and disagree with the factfinder's assessment and judgment of the conflicting testimony presented. *State v. Thompkins,* (1997) 78 Ohio St.3d 380, 388.

{¶ 17} It is the finder of fact at the trial court that is best suited to assess the believability of the witnesses at trial. *State v. Wilson*, Montgomery App. No. 22581, 2009-Ohio-525. The jury has the best opportunity to see and hear the witness' testimonies and see the evidence presented to determine how credible each is, and then exercise judgment as to which testimony is most plausible. Id. Therefore, this court will not substitute its own judgment for that of the jury unless is it clear from the record that the jury "lost its way" in its decision-making. Id.

{¶ 18} In this case, the jury heard identification testimony from two witnesses, Officer Berger and Daryl Robinson. Each witness was subject to a vigorous direct and cross-examination. The jury assessed the testimony and the credibility of both witnesses and determined that the defendant, Cory, was the driver of the vehicle and he was in possession of both the crack cocaine and the drug paraphernalia.

{¶ 19} Officer Berger testified that he had made a thorough identification of the driver as "Cory Robinson." First, he confirmed that the registered owner of the car was Cory. Second, he was provided a driver's license with Cory's name and photograph. Officer Berger matched the picture on the license with the driver of the vehicle and

determined that the driver was in fact Cory. Third, Officer Berger testified that he later looked at pictures to compare Cory with the person he saw driving the vehicle and determined they matched. In addition, Officer Berger testified that weeks after this incident, he pulled Cory over for another traffic violation and Cory said to him "You're the one that stopped me," referring to this incident.

{¶ 20} Daryl Robinson testified for the defense that he was actually the driver that Officer Berger pulled over on the night of November 8, 2009. His description of the night's events differed from Officer Berger's and Daryl denied having any drugs on his person that night, despite the fact that Officer Berger testified that he saw the drugs drop out of the driver's pocket when he tried to jump the fence. There is no evidence in the record as to Daryl and Cory's ages or whether they are physically similar in appearance. However, the jury was able to observe both on the witness stand.

{¶ 21} As to the identity of the perpetrator, the jury was free to determine whose testimony to believe. Because the jury was in the best position to hear the testimony of the witnesses and to observe the witness' demeanor on the stand, it is not evident that the jury indeed "lost its way." There is no exceptional circumstance in this case where the jury's conviction misinterpreted the evidence presented at trial.

{¶ 22} In addition, the record suggests that the defendant did knowingly obtain, possess or use a controlled substance under R.C. § 2925.11(A). Possession of drugs can be either actual or constructive. *State v. Bowshier*, Montgomery App. No. 2008 CA 101, 2009-Ohio-6387. "Constructive possession exists when an individual exercises dominion and control over an object, even though that object may not be within his immediate physical

possession." Id. However, the person must be aware of the presence of the object.

**{¶ 23}** Officer Berger's testimony identified Cory not only as the driver, but the individual who discarded the crack cocaine and digital scale found at the scene. Officer Berger testified that he actually saw the crack cocaine fall from Cory's person as he attempted to jump a fence.

**{¶ 24}** "Q: Did you notice anything as he fell?

**{¶ 25}** "A: Yes, there was a plastic baggie filled with a white substance, fall from his body. I'm not quite sure where it was."

(Tr. 25:6-8.)

**{¶ 26}** "Q: And what time of night, day or night, was it that this occurred?

**{¶ 27}** "A: It was after midnight, about 3:00 a.m.

**{¶ 28}** "Q: Was there any kind of lighting out there?

**{¶ 29}** "A: It was very -- it was rather dark. The yard that he ran behind had no lighting, which, in turn, anything that he was wearing kind of stuck out that much more.

**{¶ 30}** "Q: How is it that you were able to see the baggie fall from him if it was dark?

**{¶ 31}** "A: It was white. It was a light colored object. It stuck out in the dark.

**{¶ 32}** "Q: Okay. Did you have the lights on your cruiser on?

**{¶ 33}** "A: Yes, I did.

**{¶ 34}** "Q: Did you cruiser have spotlight on it? [sic]

**{¶ 35}** "A: Yes, it did.

**{¶ 36}** "Q: And was it on?

**{¶ 37}** "A: It was on. It was not over towards the yard. It was still placed on the vehicle.

**{¶ 38}** "Q: Did the lights on your -- from your vehicle illuminate the area?

**{¶ 39}** "A: Yes, it did."

(Tr. 27:11-28:6.)

**{¶ 40}** Officer Berger also testified that there was no one else close to the area where he recovered the items that dropped from the driver's person, and that the condition of the items suggested that they had been recently dropped.

**{¶ 41}** "Q: Officer Berger, did you notice any moisture on the ground?

**{¶ 42}** "A: Yes, I did.

**{¶ 43}** "Q: And what -- would you describe what it was like?

**{¶ 44}** "A: There was fresh dew on the ground, like a lot of mornings. I mean the ground was wet.

**{¶ 45}** "Q: Okay. The items that you located on the ground, were they wet?

**{¶ 46}** "A: No, they were not.

**{¶ 47}** "Q: Was there any type of debris or anything covering them up?

**{¶ 48}** "A: No, there was not." (Tr. 28:16-25.)

**{¶ 49}** "Q: [W]hat did you do next?

**{¶ 50}** "A: I walked over to where I saw Mr. Robinson jump the fence and the object fall from his person. I located the object, which was a plastic baggie containing over 60 grams of crack cocaine as well as the same glasses that the Defendant was wearing at the time, a digital scale, and a cell phone.

{¶ 51} "Q: How did you know that the thing in the baggie was crack cocaine?

{¶ 52} "A: I've encountered crack cocaine almost on a weekly basis on the west side of Dayton.   It's something we quite frequently come into contact -- actually, too often.

{¶ 53} "Q: Okay.   And what about this bag? Was it a normal amount for you to see?

{¶ 54} "A: No, actually, this was the largest amount I think I've ever seen in one baggie."   (Tr. 26:6-20.)

{¶ 55} Furthermore, given the size of the items recovered, and the fact that the glasses found on the ground were seemingly the same glasses depicted in the driver's license picture and worn by Cory at the time of the stop, we cannot find that the jury erred when it found that Cory was in possession of the drugs and the digital scale.   The record establishes that the crack cocaine was found to weigh 60 grams, with a street value of $6000.00.

{¶ 56} For the foregoing reasons, we find that the jury reasonably found that Cory Robinson was the driver of the vehicle that Officer Berger pulled over on November 8, 2009, and that he was guilty of possessing crack cocaine in the amount of 60 grams, as well as, drug paraphernalia, to wit: a digital scale.   The judgment is not against the manifest weight of the evidence.

{¶ 57} Cory's first assignment of error is overruled.

### III

{¶ 58} Cory's assignment of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . .

FROELICH, J. and HALL, J., concur.

Copies mailed to:

Timothy J. Cole
Peter R. Certo
Hon. Frances E. McGee