[Cite as *State v. Lynn*, 2011-Ohio-4192.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

STATE OF OHIO                              :

    Plaintiff-Appellee              :                C.A. CASE NO.    22946

v.                                         :                T.C. NO.    08CR1714

JEFFREY L. LYNN                            :                (Criminal appeal from
                                 Common Pleas Court)

    Defendant-Appellant             :


                                    :

           . . . . . . . . . .

**O P I N I O N**

Rendered on the   19th   day of    August   , 2011.

          . . . . . . . . . .

R. LYNN NOTHSTINE, Atty. Reg. No. 0061560, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

MICHAEL L. WRIGHT, Atty. Reg. No. 0067698, First National Plaza, 130 W. Second Street, Suite 1600, Dayton, Ohio 45402
        Attorney for Defendant-Appellant

          . . . . . . . . . .

DONOVAN, J.

{¶ 1}  Defendant-Apellant Jeffrey Lynn appeals his conviction and sentence for aggravated burglary, in violation of R.C. 2911.11(A)(1), a felony of the first degree.  After a jury trial, Lynn was found guilty of the charged offense and sentenced to a term of three years in prison, with a period of five years of post-release control upon his release.  Lynn

filed a timely notice of appeal with this Court on September 9, 2008.

{¶ 2}   On December 23, 2009, we rendered a decision on Lynn's appeal.   In that opinion, we reversed the trial court's judgment by sustaining Lynn's first assignment of error: THE TRIAL COURT ERRED BY VIOLATING APPELLANT'S DUE PROCESS RIGHTS TO RECEIVE ADEQUATE NOTICE OF THE CHARGES AGAINST HIM AS A RESULT OF A MISLEADING INDICTMENT AND ERRONEOUS JURY INSTRUCTIONS.   We found that because the trial court gave jury instructions beyond what had been considered by the grand jury when it indicted Lynn , Lynn's conviction violated his due process rights.   Because we found in favor of Lynn on the first assignment error, we did not consider Lynn's second assignment of error.

{¶ 3}   However, on June 27, 2011, the Ohio Supreme Court reversed our decision and remanded the case back to us for consideration of Lynn's second assignment of error. See *Ohio v. Lynn*, 2011-Ohio-2722.   For the following reasons, Lynn's second assignment of error is overruled.

I

{¶ 4}   On April 28, 2008, Lynn was arrested at the apartment of his then-girlfriend, Juanita Turnage after he kicked down the door of the apartment Juanita shared with Marion Jefferson at 1207 W. Fairview Avenue, and after he threatened to assault her.   Although Lynn would occasionally stay overnight with Juanita at the apartment, he did not have a key to the apartment, he was not allowed in the apartment without Juanita or Marion present, he did not receive any mail at the apartment, and he was not allowed in after 11:00 PM.

{¶ 5}   Throughout the day of April 28, Lynn had been attempting to contact Juanita

at the W. Fairview apartment, but had been unsuccessful. At 11:00 that evening, Lynn returned to Juanita's apartment and knocked on her window. Juanita went outside to talk to Lynn. As soon as she went outside, Lynn threatened her, grabbed her, and ripped her shirt. Upon hearing her screams for help, Marion ran out into the hallway and Juanita retreated into the apartment where she called 911.

{¶ 6} Still angry at Juanita, Lynn kicked in the apartment door and followed Juanita into the back bedroom, slamming the bedroom door on her foot and chipping a bone. By that time, a police officer arrived and upon seeing Lynn moving towards Juanita with clenched fists, ordered Lynn to step away. Lynn was subsequently arrested.

{¶ 7} On May 22, 2008, the Montgomery County Grand Jury returned an indictment against Lynn finding that Lynn "by force, stealth or deception, did trespass in an occupied structure, to wit: **residence, located at 1207 W. Fairview Avenue, Apt. #1** ...with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure, any criminal offense, to wit: **theft**, and did recklessly inflict or attempt or threaten to inflict physical harm on another, to-wit: **Juanita Turnage**; contrary to the form of the statute (in violation of Section 2911.11(A)(1) of the Ohio Revised code) in such case made and provided against the peace and dignity of the State of Ohio."

{¶ 8} At trial, both parties presented evidence on the issue of whether Lynn was trespassing on the premises, or whether Lynn also resided at that apartment and, therefore, had privilege to be there. After hearing all the testimony, a jury found Lynn guilty of aggravated burglary, concluding that Lynn was indeed trespassing at the apartment.

{¶ 9} It is from this judgment that Lynn now appeals.

II

{¶ 10} Lynn's second assignment of error is as follows:

{¶ 11} "THE TRIAL COURT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶ 12} In his second assignment of error, Lynn claims that the Court's finding of guilt was against the manifest weight of the evidence that he had privilege to be at the apartment and, therefore, was not trespassing.

{¶ 13} In determining whether a conviction is against the manifest weight of the evidence, the appellate court must review the entire record, weighing all the evidence presented and make a determination as to whether "the trier of fact 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompson,* Montgomery App. No. 23581, 2010-Ohio-4535 (citing *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387.) This argument challenges the credibility of the witnesses, the evidence presented, and the inferences that can be drawn therefrom. *State v. Wilson*, Montgomery App. No. 22581, 2009-Ohio-525. If we find that the guilty verdict was contrary to the manifest weight of the evidence presented, then we can reverse the lower court's conviction and order a new trial. *State v. Wilson*, Montgomery App. No. 22581, 2009-Ohio-525. However, this is only to be done in exceptional circumstances. Id. In such cases, we essentially sit as the "thirteenth juror" and determine that the factfinder's assessment of the conflicting testimony was unjustified. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387.

{¶ 14} It is the factfinder at the trial that is best equipped to assess the credibility of

the witnesses at trial and the evidence presented, and then make a determination as to which testimony is most plausible. *State v. Wilson*, Montgomery App. No. 22581, 2009-Ohio-525. Therefore, unless we determine that the jury truly "lost its way" in reaching its decision, we will not substitute our judgment for that of the jury. Id.

{¶ 15} In this case, the jury heard testimony from many witnesses as to whether Lynn was residing at the apartment on W. Fairview, or was simply a regular guest of Juanita. The jury assessed the testimony itself and the credibility of the witnesses, and determined that Lynn was not a resident of 1207 W. Fairview, Apt. #1, and, therefore, did not have privilege to be on the premises on the evening of April 28, 2008.

{¶ 16} Juanita testified that although she and Lynn had been seriously dating for approximately one year, and Lynn often stayed overnight with her, Lynn had never lived with her at the Fairview apartment.

{¶ 17} "Q: How often would you say he stayed over?

{¶ 18} "A: It varied because some nights I didn't see him, some nights I did. He would call, let me know he was coming. So, I would get up, open up the door and let him in.

{¶ 19} "Q: And, where would he sleep when he came?

{¶ 20} "A: Me and him would make a pallet on the floor and sleep together.

{¶ 21} "Q: Did the defendant ever have any keys to the apartment on Fairview?

{¶ 22} "A: No.

{¶ 23} "Q: Did he ever receive any mail there?

{¶ 24} "A: No.

**{¶ 25}** "Q: Did he have a bedroom there?

**{¶ 26}** "A: No.

**{¶ 27}** "Q: Did he have his own closet?

**{¶ 28}** "A: No.

**{¶ 29}** "Q: Did he ever spend time alone in the apartment?

**{¶ 30}** "A: Not that I know of.

**{¶ 31}** "Q: I mean, that you know of when you weren't there?

**{¶ 32}** "A: No.

**{¶ 33}** "Q: Where did you know him to live on April 28, 2008?

**{¶ 34}** "A: 25 South Plaza at his mother's where all his mail came."

**{¶ 35}** (Tr. 55:24-56:17.)

**{¶ 36}** The State also presented testimony from Marion that Lynn did not reside at the Fairview apartment with her and Juanita, but that Lynn would stay at the apartment "every once in awhile." (Tr. 102:10.)

**{¶ 37}** The State further presented evidence that Lynn regarded himself only as a visitor of the Fairview apartment and not a resident. Officer Phillips testified that when he arrested Lynn on April 28, 2008, Lynn gave the address of 25 South Plaza, which was included in the officer's arrest report. In addition, Detective Miller testified that when he questioned Lynn on April 30, 2008 about this incident, that Lynn provided him with an address of 25 South Plaza Avenue. This was the same address that was listed for Lynn in the Dayton Police Department Records for the year of 2008, but prior to the April 28th incident.

{¶ 38} The defense presented testimony from Lynn's mother and brother stating that Lynn did not live at 25 South Plaza on April 28, 2008. Lynn's mother did testify, however, that Lynn still got his mail delivered to that address.

{¶ 39} There was also testimony from Fletcher McKinney, Lynn's employer and former roommate, that he helped Lynn when he moved out of McKinney's home and into the W. Fairview apartment. McKinney testified that he drove Lynn, and all his bags and boxes of belongings, to Cash Land to pick up a key for the apartment from Marion, and watched him unload his belongings from McKinney's truck into the apartment. McKinney also testified that on another occasion he went to the W. Fairview apartment to pick Lynn up for work, and observed Lynn and Juanita asleep on the apartment floor together. However, the State presented rebuttal testimony from Detective Miller challenging McKinney's testimony about the building's buzzer system, which called into question McKinney's credibility.

{¶ 40} Based on an entire review of the record, we find that there was evidence adduced at trial that Lynn did not reside at 1207 W. Fairview Avenue, Apt. #1. The jury did not lose its way simply because it chose to believe the state's witnesses over the defendant's witnesses. For the foregoing reasons, we find that the jury reasonably found that Lynn did not have privilege to be at 1207 W. Fairview Avenue, Apt. #1 on April 28, 2008, and thus he was trespassing. The judgment was not against the manifest weight of the evidence.

{¶ 41} Lynn's second assignment of error is overruled.

III

{¶ 42} Lynn's first assignment of error having been overruled by the Ohio Supreme

Court, and the second assignment of error having been overruled herein, the judgment of the trial court is affirmed.

. . . . . . . . . .

FAIN, J. and HALL, J., concur.

Copies mailed to:

R. Lynn Nothstine
Michael L. Wright
Hon. Frances E. McGee