[Cite as *State v. Williams*, 2018-Ohio-4344.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 27696 |
| | : | |
| v. | : | Trial Court Case No. 2016-CRB-6047 |
| | : | |
| ASHLEY R. WILLIAMS | : | (Criminal Appeal from |
| | : | Municipal Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 26th day of October, 2018.

. . . . . . . . . . .

MATTHEW KORTJOHN, Atty. Reg. No. 0083743, Assistant City of Dayton Prosecuting Attorney, 335 West Third Street, Room 372, Dayton, Ohio 45402
    Attorney for Plaintiff-Appellee

BEN M. SWIFT, Atty. Reg. No. 0065745, P.O. Box 49637, Dayton, Ohio 45449
    Attorney for Defendant-Appellant

. . . . . . . . . . . .

TUCKER, J.

{¶ 1} Defendant-appellant Ashley Williams appeals from her conviction for disorderly conduct, resisting arrest and obstructing official business. Williams contends that the State did not present evidence sufficient to sustain the conviction and that the conviction was not supported by the weight of the evidence.

{¶ 2} We conclude that the State presented evidence upon which a reasonable finder of fact could rely to find that Williams committed the offenses. Accordingly, we affirm the judgment of the trial court.

## I. Facts and Procedural History

{¶ 3} On September 4, 2016, Williams was charged by complaint with disorderly conduct, resisting arrest and obstructing official business. A bench trial was conducted in the Dayton Municipal Court. Dayton Police Officer Luke Scott testified on behalf of the State. Scott testified that, on September 3, 2016, at approximately 7:45 p.m., he and his partner, Michael Schwartz, responded to a dispatch regarding a disturbance at an apartment located on Hepburn Avenue. When the officers arrived on the scene, they could hear yelling inside the apartment building. As they approached the apartment building, they were met outside by Anita Douglas who was identified as the person who had made the call to the police. Douglas told the officers that her daughter, later identified as Williams, was inside the apartment causing a disturbance with other family members. Douglas further told the officers that she wanted Williams removed from the apartment.

{¶ 4} At that point, Williams exited the apartment. She was screaming

"obscenities," and the officers asked her to "please quiet down." Tr. p. 9. According to Scott's testimony, Williams continued to scream the word "f*** over and over." *Id.* Scott testified that the officers tried to "give her some leeway," but she continued to scream obscenities after being asked, multiple times, to stop. *Id.* Scott testified that there were adults and children milling around outside and that the officers did not want the situation to get out of control. He testified that they were trying to investigate the incident in order to "figure out what was going on," and to make sure that there had been no violence or injuries in the apartment. *Id.* at 18. He testified that Williams hampered their ability to investigate because she refused to comply with their requests to alter her behavior. Scott testified that he finally gave Williams a warning that she might be placed under arrest if she did not desist.

{¶ 5} Scott testified that, even after that warning, Williams continued to yell and curse at her family members. He testified that Williams began to walk along the side of the apartment building toward the back where her car was parked. Scott testified that for another minute or two he continued to tell her to stop yelling. When she failed to comply, Scott determined that he was going to arrest her for disorderly conduct. At that point, Williams had reached her car. As Scott attempted to place her in handcuffs, she pulled her arm away and grabbed the frame of the car door. Both officers had to struggle with Williams and use force in order to place her in the handcuffs. The officers then began to escort Williams to their cruiser, but Williams slipped one hand out of the handcuffs. After putting the handcuff back on, the officers noted that Williams would not comply with their request to walk to the cruiser, and they had to carry her the rest of the way. According to Scott, she continued yelling until they reached the cruiser, then she

finally calmed down.

{¶ 6} Douglas was called to testify by the defense. She testified that she met the officers at the door and told them that she wanted Williams to leave the premises and to take her children with her. Douglas testified that she informed the officers that Williams had been yelling about money. She testified that Williams then passed her and exited the apartment. Douglas testified that Williams was not yelling at that point. According to Douglas, when Williams was out of sight, she heard her yell "why you on me like this." Tr. p. 36. Douglas testified that she then went outside and saw Williams at her car being held by the officers. Douglas testified that she never heard either officer issue a warning to Williams.

{¶ 7} Williams also testified at the trial. She testified that when she observed the officers at the door, she said "f***" under her breath and began to leave to go to her car. She testified that she left willingly and that the officers did not ask her to leave or to be quiet. She denied resisting arrest and stated that her arm came out of the handcuffs because the police officers were pulling on her arms. On cross-examination, she testified that she believed the officers arrested her because they wanted to "make the charges [from a prior case] stick." Tr. p. 56.

{¶ 8} The trial court found Williams guilty of all charges and sentenced her to 30 days in jail for disorderly conduct, 90 days for resisting arrest, and 90 days for obstructing official business. All jail time was suspended. She was also sentenced to one year of supervised probation with the condition that she attend anger management classes and submit to drug and alcohol testing. Finally, she was fined $50 and ordered to pay court costs.

**{¶ 9}** Williams appeals.

## II. Analysis

**{¶ 10}** Williams asserts the following as her sole assignment of error:

THE EVIDENCE PRESENTED AT TRIAL WAS INSUFFICIENT AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE TO SUSTAIN WILLIAMS' CONVICTIONS.

**{¶ 11}** In her assignment of error, Williams contends that her convictions were not supported by sufficient evidence and were against the manifest weight of the evidence.

**{¶ 12}** Initially, we note that the State contends that Williams's appeal is moot because she paid her fine and court costs in full on July 10, 2018. In support, the State cites to the online trial court case summary. Because the online case summary is not a part of the record before us, we may not consider it. However, we also note that Williams has not disputed the State's argument regarding mootness. Thus, while it appears the matter has been rendered moot, we will nonetheless address Williams's argument.

**{¶ 13}** "A sufficiency of the evidence argument disputes whether the State has presented adequate evidence on each element of the offense * * * to sustain the verdict as a matter of law." *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 10, citing *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997). "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light

most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), at paragraph two of the syllabus.

**{¶ 14}** "A weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." (Citation omitted.) *Wilson* at ¶ 12. Thus, a court reviews " 'the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [court] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.' " *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

**{¶ 15}** "Although sufficiency and manifest weight are different legal concepts, manifest weight may subsume sufficiency in conducting the analysis; that is, a finding that a conviction is supported by the manifest weight of the evidence necessarily includes a finding of sufficiency. *State v. Baatin*, 10th Dist. Franklin No. 11AP-286, 2011-Ohio-6294, ¶ 9, citing *State v. McCrary*, 10th Dist. Franklin No. 10AP-881, 2011-Ohio-3161, ¶ 11, citing *State v. Braxton*, 10th Dist. Franklin No. 04AP-725, 2005-Ohio-2198, ¶ 15. "Thus, a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." *Id.*

**{¶ 16}** Williams was convicted of obstructing official business in violation of R.C. 2921.31(A), which provides that "[n]o person, without privilege to do so and with purpose

to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties." "A person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature." R.C. 2901.22(A).

{¶ 17} Williams was also convicted of disorderly conduct in violation of R.C. 2917.11, which provides that "[n]o person shall recklessly cause inconvenience, annoyance, or alarm to another by * * * [m]aking unreasonable noise or an offensively coarse utterance, gesture, or display or communicating unwarranted and grossly abusive language to any person[.]" The statute further provides that the offense is a misdemeanor of the fourth degree if "[t]he offender persists in disorderly conduct after reasonable warning or request to desist." R.C. 2917.11(E)(3)(a).

{¶ 18} Finally, Williams was convicted of resisting arrest in violation of R.C. 2921.33(A). That statute states that "[n]o person, recklessly or by force, shall resist or interfere with a lawful arrest of the person or another." "A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that such circumstances are likely to exist." R.C. 2901.22(C).

{¶ 19} Williams claims that her convictions were against the weight of the evidence

because the officers had no reason to conduct an investigation, as they had been called merely as peace officers regarding a "simple domestic dispute." She further claims that the evidence demonstrated that she was willingly and peacefully leaving the scene of her own accord when she was arrested. Finally, she contends that the officers arrested her as retaliation for her interference in a prior matter during which the police had arrested her brother.

{¶ 20} This argument necessarily hinges upon witness credibility. "Because the factfinder * * * has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684, *4 (Aug. 22, 1997).

{¶ 21} The State presented evidence upon which a reasonable factfinder could rely to find that Williams caused a disturbance in her mother's apartment, which was sufficient to prompt her mother, Douglas, to call the police. Further, the evidence presented by the State demonstrated that Williams continued to yell and use profanities outside of the apartment in the presence of the police as well as other adults and children, and that her actions prevented the police from conducting an investigation into the reason for Douglas's request for a police response. There was also evidence that Williams ignored repeated requests from the officers to stop yelling, and that she continued her behavior even after being warned of possible arrest. Finally, the State's evidence

showed that Williams struggled to prevent the officers from placing handcuffs on her, that she broke free of one cuff, and that she did not comply with their instructions to walk to the cruiser.

**{¶ 22}** We conclude that Williams's conviction was supported by the weight of the evidence. The record does not support a conclusion that the trial court clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. We further conclude that the evidence was sufficient to sustain the conviction.

**{¶ 23}** Accordingly, the sole assignment of error is overruled.

### III. Conclusion

**{¶ 24}** The sole assignment of error being overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

WELBAUM, P.J. and FROELICH, J., concur.

Copies sent to:

Matthew Kortjohn
Ben M. Swift
Ashley R. Williams
Hon. Daniel G. Gehres