[Cite as *State v. Rimi*, 2022-Ohio-4117.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 29414 |
| | : | |
| v. | : | Trial Court Case No. 2021-CR-3398 |
| | : | |
| EDWARD RIMI | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 18th day of November, 2022.

. . . . . . . . . . .

MATHIAS H. HECK, JR. by ANDREW T. FRENCH, Atty. Reg. No. 0069384, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, 5th Floor, Dayton, Ohio 45422
      Attorney for Plaintiff-Appellee

LUCAS W. WILDER, Atty. Reg. No. 0074057, P.O. Box 574, Dayton, Ohio 45409
      Attorney for Defendant-Appellant

. . . . . . . . . . . . .

LEWIS, J.

{¶ 1} Defendant-Appellant Edward Rimi appeals from his conviction for domestic violence. Rimi contends that the jury's verdict was against the manifest weight of the evidence and was not supported by sufficient evidence. Rimi also contends that the evidence presented by the State of a prior conviction for domestic violence was insufficient to elevate his conviction from a misdemeanor to a felony. For the reasons that follow, we affirm the trial court's judgment of conviction.

I.      Facts and Course of Proceedings

{¶ 2} On October 21, 2021, a Montgomery County grand jury indicted Rimi on one count of domestic violence in violation of R.C. 2919.25(A) and one count of resisting arrest in violation of R.C. 2921.33(A). The two counts in the indictment arose from an incident on October 12, 2021, involving Rimi and his girlfriend, M.L.[1] The indictment also alleged that Rimi had previously pled guilty to or been convicted of domestic violence on January 12, 1999.

{¶ 3} On December 6, 2021, Rimi filed a "Motion To Strike/Motion In Limine Regarding Prior Conviction." In this motion, Rimi contended that his prior conviction had been without counsel or an effective waiver of counsel and therefore had been constitutionally infirm. Attached as Exhibit A to this motion was an affidavit of Rimi that stated, in part, "I have no recollection of having had the benefit of counsel when a plea was entered in Dayton Municipal Court Case No. 1998-CRB-15639." Attached as Exhibit B to the motion was a certified copy of the conviction in Case Number 98 CRB

---

[1] To protect the privacy of the victim, we will refer to her as M.L.

15639 in the Dayton Municipal Court.   The trial court denied the motion.

{¶ 4} A jury trial was held on January 12 and 13, 2022.   Jay Wheeler testified first for the State.   He is a supervisor at the Regional Dispatch Center of the Montgomery County Sheriff's Department.   He testified about the authenticity of the 911 emergency call M.L. placed at 2:09 p.m. on October 12, 2021.   Trial Transcript, p. 35-36, 39.

{¶ 5} M.L. testified next for the State.   As of October 12, 2021, she had lived with Rimi and their 3-year-old daughter on Gummer Avenue in Dayton for over a year.   M.L. and Rimi had been dating on and off for approximately six years.   *Id.* at 41, 43.   On the afternoon of October 12, 2021, Rimi started screaming and yelling at her inside the residence.   *Id.* at 48-50.   He said that she was worthless and had ruined his life and that he was better off without her.   *Id.* at 51.   Rimi began throwing toys at her.   One of the objects, a hard plastic-like ball, hit her above her eye and caused her to bleed.   *Id.* at 48-50.   According to M.L., Rimi also kicked her in the leg with his steel-toed boots and punched her in the ribs and the back of her head.   *Id.* at 48-50.   Rimi then left the house. M.L. called 911 about two or three minutes after Rimi left the house.   *Id.* at 50-51, 54. At that moment, she felt embarrassed, helpless, and nervous.   *Id.* at 54.

{¶ 6} M.L. was shown several pictures taken of the room in which the incident happened.   She testified that all the items on the floor of the bedroom were items that Rimi had thrown at her.   *Id.* at 69-70.   On cross-examination, M.L. testified that she had not gone to the hospital after the incident or received medical treatment.   *Id.* at 67-68. M.L. was able to stop the bleeding herself using a bed sheet.   *Id.* at 69.

{¶ 7} City of Dayton Police Officer Paul Harris testified next for the State.   He had

responded to the 911 call on October 12, 2021. When he arrived at the residence, M.L. had a gash above her eye, blood on her and her clothes, and appeared frightened and scared. *Id.* at 78-80. Officer Harris was in the home for only three or four minutes before Rimi entered the residence from the rear door. At that time, M.L. took her daughter out the front door. *Id.* at 81. Rimi came into the house yelling, and Officer Harris readied his taser. When Rimi entered, Officer Harris ordered him to his knees. Rimi put his hands partially behind his back but did not comply with the order to drop to his knees. Officer Harris took this as a sign that Rimi was aggressive and wanted to fight, so he tased Rimi. *Id.* at 83-86. Shortly after tasing Rimi, another police officer arrived at the scene, and they arrested Rimi. *Id.* at 98.

{¶ 8} Detective Daniel O'Neill with the City of Dayton Police Department testified last for the State. He had been assigned to be the lead detective on the case. Based on the information he reviewed, he determined that Rimi had a prior domestic violence conviction. *Id.* at 133. He went to the Dayton Municipal Court and got a certified copy of this prior conviction, which was admitted into evidence as State's Exhibit 14. *Id.* at 133-135. Detective O'Neill also reviewed the camera recording from the police cruiser, noting that Rimi referred to the residence as "my house" and the child as "my daughter." *Id.* at 146, 150-151, 157-158. On cross-examination, Detective O'Neill conceded that he had not interviewed any neighbors about the incident. *Id.* at 162-164.

{¶ 9} Rimi testified on his own behalf. *Id.* at 172-224. He stated that he had never pleaded guilty to or been convicted of domestic violence. *Id.* at 175, 202. Rimi conceded that his name and social security number on Exhibit 14 were correct. *Id.* at

201. He testified that the original charge in the 1999 case had been for domestic violence, a first-degree misdemeanor, but he had pled guilty to a reduced, fourth-degree misdemeanor charge. Rimi believed that the fourth-degree misdemeanor was "disorderly conduct or something like that." *Id.* at 176, 203. Rimi stated that he would have remembered if he had pled guilty to a domestic violence charge. *Id.* at 223. He agreed that Exhibit 14 noted a fourth-degree misdemeanor of domestic violence. *Id.* at 219-220.

{¶ 10} Rimi testified that he had lived with M.L. and their daughter on October 12, 2021. *Id.* at 178. He had been fighting verbally with M.L. that day. Eventually, he kicked the toy rack and the toys scattered everywhere. Then Rimi picked up some of the toys and started throwing them at M.L. *Id.* at 180-181. He did not believe his throw hit M.L. directly, but it may have hit her on a ricochet off the wall. *Id.* at 181. Rimi conceded that he knew throwing things at someone could cause an injury but contended that he had not wanted to hurt M.L. *Id.* at 181, 192. He agreed that he hurt M.L. with the toy and that she had not been bleeding or injured before he hit her with the toy. *Id.* at 192-193.

{¶ 11} The jury found Rimi not guilty of resisting arrest but guilty of domestic violence. Also, the jury found that Rimi previously had been convicted of a domestic violence charge. The trial court sentenced Rimi to 12 months in prison. Rimi filed a timely notice of appeal.

II.    Manifest Weight and Sufficiency of the Evidence

{¶ 12} Rimi's sole assignment of error states:

THE JURY'S VERDICTS WERE NOT SUPPORTED BY SUFFICIENT EVIDENCE AND WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 13} "A sufficiency of the evidence argument disputes whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law." *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 10, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). When reviewing whether the State has presented sufficient evidence to support a conviction, the relevant inquiry is whether any rational finder of fact, after viewing the evidence in a light most favorable to the State, could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Dennis*, 79 Ohio St.3d 421, 430, 683 N.E.2d 1096 (1997). A guilty verdict will not be disturbed on appeal unless "reasonable minds could not reach the conclusion reached by the trier-of-fact." *Id.*

{¶ 14} In contrast to the sufficiency of the evidence standard, "a weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." *Wilson* at ¶ 12. When evaluating whether a conviction is contrary to the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such

a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins* at 387, citing *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 15} Because the trier of fact sees and hears the witnesses at trial, we must defer to the factfinder's decisions whether, and to what extent, to credit the testimony of witnesses. *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684, *4 (Aug. 22, 1997). The fact that the evidence is subject to different interpretations does not render the conviction against the manifest weight of the evidence. *Wilson* at ¶ 14. A judgment of conviction should be reversed as being against the manifest weight of the evidence only in exceptional circumstances. *Martin* at 175.

{¶ 16} Rimi was convicted of domestic violence in violation of R.C. 2919.25(A), which provides that "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member." "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). The term "physical harm" is defined as "any injury, illness, or physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3). The term "family or household member" includes "a person living as a spouse." R.C. 2919.25(F)(1)(a)(i). "Person living as a spouse" is someone who "has cohabited with the offender within five years prior to the date of the alleged commission of the act in question." R.C. 2919.25(F)(2).

{¶ 17} The evidence presented at the trial established that Rimi had committed domestic violence in violation of R.C. 2919.25(A). Both he and M.L. confirmed that they

had been living together at the time of the offense, along with their child. Further, both testified that Rimi had thrown objects at M.L. that resulted in her being physically harmed. Although Rimi testified that he had not intended to injure her, he agreed that he had known that throwing objects at someone could result in an injury. M.L. also testified that Rimi had kicked her and punched her. Moreover, the pictures admitted into evidence at trial showed the physical injury suffered by M.L. Based on the record before us, we conclude that the guilty verdict for domestic violence was supported by sufficient evidence and was not against the manifest weight of the evidence.

{¶ 18} Rimi next contends that the jury incorrectly found that he had a prior domestic violence conviction. Rimi explains:

> The purported prior Domestic Violence conviction does not indicate
> that Rimi was represented by counsel or that he was [in] fact convicted of
> Domestic Violence (something he denied on the stand). Further, there was
> a line for Defendant's signature but it is blank. The prior conviction was not
> valid and/or did not prove beyond a reasonable doubt that Rimi had a prior
> Domestic Violence conviction.

Appellant's Brief, p. 9.

{¶ 19} The State disagrees. According to the State, there was overwhelming evidence presented at trial to connect Rimi to the prior conviction for domestic violence. Appellee's Brief, p. 10. Further, Rimi failed to establish, by a preponderance of the evidence, his prima facie case that his prior conviction had been constitutional infirm. *Id.* at 11. Instead, the State contends that Rimi did nothing more than make a conclusory

statement that he did not remember being represented by counsel or pleading guilty to a domestic violence charge. *Id.*

{¶ 20} The dispute over whether Rimi previously had been convicted of domestic violence was relevant to whether Rimi's domestic violence conviction in this case was a misdemeanor or a felony. Whoever violates R.C. 2919.25(A) is guilty of domestic violence, which is a misdemeanor of the first degree. R.C. 2919.25(D). However, if the offender previously pled guilty to or was convicted of domestic violence, then a violation of this section is a felony of the fourth degree. R.C. 2919.25(D)(3).

{¶ 21} In *State v. Brooke*, 113 Ohio St.3d 199, 2007-Ohio-1533, 863 N.E.2d 1024, ¶ 9, the Ohio Supreme Court held that "[a] conviction obtained against a defendant who is without counsel, or its corollary, an uncounseled conviction obtained without a valid waiver of the right to counsel, has been recognized as constitutionally infirm." (Citations omitted.) Generally, a past conviction cannot be attacked in a subsequent case; there is, however, "a limited right to collaterally attack a conviction when the state proposes to use the past conviction to enhance the penalty of a later criminal offense." *Id.*

{¶ 22} R.C. 2945.75(B) lays out the procedure for situations in which the State is using a prior conviction in an attempt to enhance an offense. R.C. 2945.75(B)(1) provides "[w]henever in any case it is necessary to prove a prior conviction, a certified copy of the entry of judgment in such prior conviction together with evidence sufficient to identify the defendant named in the entry as the offender in the case at bar, is sufficient to prove such prior conviction." Further, R.C. 2945.75(B)(3) provides that, "[i]f the defendant claims a constitutional defect in any prior conviction, the defendant has the

burden of proving the defect by a preponderance of the evidence."

{¶ 23} At trial, the State introduced Exhibit 14, which was a certified copy of an Order and Entry in Case Number 98 CRB 15639 in the Dayton Municipal Court. The document listed Edward T. Rimi as the defendant and stated his correct social security number and date of birth. The document noted that Rimi had pled guilty to domestic violence, a fourth-degree misdemeanor in violation of R.C. 2919.25(A)(1). State's Exhibit 14 also contained an official seal from the Clerk of Courts for the Dayton Municipal Court. This evidence was sufficient to establish the prior conviction for domestic violence.

{¶ 24} Further, Rimi's only evidence submitted contrary to Exhibit 14 was his conclusory testimony that he did not remember pleading to a domestic violence charge and did not remember being represented by an attorney in that case. However, he did recall that, in the 1999 case, he was originally charged with a first-degree misdemeanor domestic violence charge and pled down to a fourth-degree misdemeanor charge. State's Exhibit 14 is consistent with that testimony. Rimi's testimony that he believed the fourth-degree misdemeanor was "disorderly conduct or something like that" was insufficient, without more, to overcome the evidence presented by the State that the fourth-degree misdemeanor was for domestic violence, not disorderly conduct.

{¶ 25} We conclude that the jury's finding that Rimi had been previously convicted of domestic violence was supported by sufficient evidence and was not against the manifest weight of the evidence. Rimi's sole assignment of error is overruled.

III.    Conclusion

    {¶ 26} Having overruled Rimi's assignment of error, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

TUCKER, P.J. and DONOVAN, J., concur.

Copies sent to:

Mathias H. Heck, Jr.
Andrew T. French
Lucas W. Wilder
Hon. Susan D. Solle